<hr/>

KIRTEN v. SPEARS.

1.  ARBITRATORS:  *Legality of award.*

    Unless the illegality of the decision of arbitrators appears upon the face of their award, the court will not set it aside on the ground merely that the arbitrators mistook the law, or decided contrary to the rules of established practice of courts of law and equity.

2. SAME: *Conclusiveness of award.*

   In general, arbitrators have full power to decide upon questions of law and fact, which directly or incidentally arise in considering and determining the questions embraced in the submission, and their decision upon such matters is conclusive.

3. TRUSTEE: *What deed must make to cestui que trust.*

   A trustee holding the naked legal title for his *cestui que trust* cannot be required to make any other deed to the *cestui que* than a deed of release with covenants against acts done or suffered by himself.

APPEAL from *Pulaski* Chancery Court.
Hon. D. W. CARROLL, Chancellor.

*E. W. Kimball* and *Robert A. Howard* for appellant.

1. The court had power to review the award. *Gantt's Digest, chapter 6, sections 251, 252, 253, 254, etc.*

2. The main contest was whether there was a partnership or not, and the arbitrators wholly failed to decide the point, but undertook to *compromise,* or do general equity. Nor was the award final, nor co-extensive with the submission, and the exceptions on these grounds should have been sustained. (*8 Ad. & El., 290; Morse on Arb. and Aw., 252; 9 Vesey Jr., 364; 3 East., 18; 7 Exch., 269.*) An award is void where it appears either *on its face* or from intrinsic proof that the arbitrators had notice of any matter covered by the submission which they failed to decide. (*4 Duer, 133; 20 Pick., 531; 5 Cow., 197; 7 Barr., 134; 1 Caines R., 304.*) The award and submission must agree. (*Sup.*) See also, on this subject, *1 Miles, 21.* If they mistake the law, when undertaking to be governed by the law, the award is void. (*Morse on Arb. and Award, 300.*) It was necessary, if they found a partnership, to state its commencement, duration, etc., and to say what constituted the partnership effects, etc. (*5 Jones, Law, 298.*) See, also, *4 M. & Cr., 150; 9 Metc., 131 (168); 7 Metc., 486;*

*2 Dowl., 38; 1 Cases in Ch., 186 ; 2 Ib., 279; 49 Pa. St., 371;
5 Allen, 566.*

3. If Spears made and caused these conveyances, transfers and payments, etc., with a view of defeating his creditors, no suit is maintainable by him against Kirten for the recovery of either real or personal property. *7 Johns., 159; 1 A. K. Marsh., 208; 48 Ill., 228; 2 Barr., 67; 3 Paige, 154; 5 Binney, 112.*

*John McClure* and *S. R. Allen* for appellee.

No extrinsic evidence is brought forward against the award. Then if it is co-extensive with the issue it must stand, if it is definite and final enough for a judgment to be entered thereon. In other words it must be void on its face. The court certainly has power to set it aside for fraud, mistake and the like, but none is shown here.

The award certainly finds *there was no partnership.* The burden of proving this was on appellant. If he failed in this affirmative the issue was against him.

When parties refer their differences to arbitrators it is usually in a spirit of *compromise.*

As no evidence was introduced, and the arbitrators did not incorporate the evidence, books, accounts, etc., in these findings, the award must stand as correct and a full settlement of the matters submitted to them.

SMITH, J. Spears brought his action at law in the Pulaski Circuit Court to recover of Kirten $19,504.33, alleged to be due for money had and received to the plaintiff's use. On the same day he filed his bill in the Pulaski Chancery Court against the same defendant, stating that he had purchased and paid for certain lots in the city of Little Rock, but for private reasons did not take the title directly to himself; that he accordingly caused the conveyance to

be made to the defendant, a friend in whom he reposed confidence, and who accepted the trust, and agreed to convey to the plaintiff upon his request; that the plaintiff requested a conveyance, and was informed that the deed had been executed and was in the hands of the defendant's attorney, but upon applying for it, the plaintiff was met with a demand that he should first sign an acquittance of all demands against the defendant—a demand he refused to comply with, as the defendant was indebted to him in the sum of $19,504.33, being the same moneys that were sued for in the action first-above mentioned, and the deed was consequently withheld. And the prayer was for a conveyance of the lots according to the trust.

Kirten filed his answer to the action at law, setting up that the controversy arose out of a partnership existing between himself and the plaintiff; and he moved a transfer of the cause to the Pulaski Chancery Court, where matters of this nature are properly cognizable. By consent of parties the transfer was made and the two suits were consolidated. Kirten made his answer a cross-bill, and alleged that in the year 1876 he and Spears had entered into a copartnership for the manufacture and sale of bricks; that Kirten was to furnish the necessary capital for the prosecution of the enterprise, and to have control of the finances, while Spears was to give his personal attention to the business; that Kirten thereupon advanced $250, and other sums as needed; that the business grew and prospered, and, in short, that the moneys in his hands, of which an account is stated, represents the net profits of the firm, to only half of which the plaintiff is entitled. He further alleges that the lots were purchased with partnership funds and are the property of the firm. Moreover, he avers that there is a large brick-making "plant" now on hand, consisting of wagons, mules, tools and ma-

chinery, which is also the property of said firm, and which has not been divided. And he prays for a reference to a Master to take and state an account between the partners.

In answer to the cross-bill, Spears denied the existence of any copartnership, and of every fact stated by Kirten, from which a partnership might be inferred. His version of the dealings between himself and Kirten is in substance this: That he was, in 1876, in the decline of life and charged with the support of a family, including an invalid son; that he had formerly lived in the State of Ohio, in affluent circumstances, but had his property swept away from him for liabilities which he had incurred as surety for others: that some of these debts were still hanging over him; that having some skill in the art of manufacturing brick, he had removed to Arkansas and gone into that business; that he had accumulated property to the value of $5,000, but was apprehensive lest his present capital and future earnings would be melted away in satisfying these old claims, or in paying lawyers' fees to defend against them; that he was advised by counsel that the only way to escape molestation was to carry on his business under the name of some other party; that with this view he applied to Kirten, whom he had long known, and who was a man of means and commercial standing; that he succeeded in convincing Kirten that he would run no real risk by lending him the use of his name, and that no money would be required in the conduct of the business beyond what Spears could himself command; that the arrangement would, however, entail some labor on Kirten in the way of keeping accounts, collecting bills for sales made by Spears, paying drafts, etc.; and for this trouble Spears proposed to compensate him by allowing him to keep all interest that might be collected on credit sales, and by paying a portion of his clerk hire;

that the plaintiff was an uneducated man, unable to write, or to keep books of account; that the defendant gave his consent to the arrangement, the whole extent of which was a mere device and cover to enable the plaintiff to do business for himself; and that the title to the lots was taken in Kirten's name for the same reasons, and they constituted his homestead where he and his family resided.

It was further stated that under this arrangement it was the plaintiff's custom to turn over to the defendant, upon a sale of bricks, the account, draft, note or other evidence of indebtedness, for collection; and in the payment of his laborers and others, to draw upon the fund so deposited. But he denies that he ever overdrew his account, or that defendant ever advanced $250 or any other sum out of his own means.

After the issue had been thus made up, the parties, by written agreement, filed and noted on the record and made a rule of court, submitted their differences to arbitrators of their own selection. These arbitrators took the oath prescribed by statute (*Gantt's Digest, sec. 247*), before entering on their duties, and made the following award:

" Your arbitrators have, in consequence of the conflict of testimony, and the irregularity of the accounts between the parties, and the manner in which the business has been conducted—at the commencement—during the time the partnership is claimed to exist, or at the time this difficulty commenced, and a careful investigation of the testimony, and also a careful analysis of the accounts, we have failed to find sufficient facts to justify a positive or specific copartnership, but believing the name and energy of the defendant Kirten greatly benefited the business, we are compelled to make our findings in the case in a spirit of com-

Kirten v. Spears.

promise.  We have therefore decided upon the following basis of settlement:

" To divide the balance that is shown in the accompanying statement to be in the hands of the defendant, Kirten, on the twenty-third day of February, 1881, amounting to eleven thousand five hundred and sixty-six dollars and eighty-one cents ($11,566.81) equally between the parties, making the amount due from Kirten to Spears the sum of five thousand seven hundred and eighty-three dollars and forty cents ($5,783.40); Kirten to make a deed to Spears of lots five (5), six (6), seven (7) and eight (8), in block ten (10), Russell's addition to the city of Little Rock; Spears to be left in peaceable possession of the brick-yard, teams, tools and fixtures of whatsoever kind which were in his (Spears) possession on the twenty-fifth day of December, 1880, and the costs in this case to be equally divided between the parties.

" J. A. HENRY,

" J. G. FLETCHER, <i>Arbitrators.</i>

" JOHN E. REARDON, <i>Umpire.</i>"

Kirten moved to set aside the award on account of seventeen specified objections.  These exceptions were all overruled, except one, which related to the propriety of charging Kirten with sundry sums of money, amounting to $1,900.90, which the arbitrators found to be in his hands, but which were not included in the plaintiff's bill of particulars.  And the court proceeded to render judgment in favor of the plaintiff against the defendant for $4,832.95. And it further decreed that the defendant execute and deliver to the plaintiff a good and sufficient deed to the lots, and that in default thereof for the space of twenty days, the title to said lots be divested out of him and vested in the plaintiff.  And that the plaintiff be left in the undisturbed possession of the brick-yard, teams, tools

Kirten v. Spears.

and fixtures, the costs of suit to be equally divided between the parties. From this decree Kirten alone has appealed.

Some of these exceptions attack the award upon the ground that it does not decide the principal fact that was in controversy—partnership or no partnership. We have an impression that the arbitrators have very distinctly negatived the existence of a copartnership. As to the correctness of that finding, we are not in a situation to judge. For there is not a particle of evidence in the record; neither was any used before the Chancellor. The arbitrators, it seems, inspected books and accounts and examined witnesses; but the evidence has not been preserved. Let it be remembered that it was Kirten who alleged a partnership. It was therefore incumbent upon him to prove it. And nothing appearing to impugn the finding of the arbitrators, that branch of the cause would be legally adjudged against him.

Another exception was, that no judgment could be entered on the award. The Chancellor seems to have been at no loss to frame the proper decree. The award is clear, explicit and final. It settles the rights of the parties as to all matters that were in dispute and directs what each is to do or to pay.

Still another exception was that the arbitrators had erred in matters of law, and instead of determining the rights of the parties, had made a compromise. The illegality of the decision does not appear upon the face of the award, and unless it does so appear, the court will not interfere on the ground merely that the arbitrators have mistaken the law, or have advisedly decided contrary to the rules of established practice observed by courts of law and equity. *Caldwell on Arbitration, 147, and cases cited.* <sub>1. Arbitrators: Legality of award.</sub>

If the parties wanted exact justice administered according to the forms of law, they should have allowed their <sub>2. Conclusiveness of award.</sub>

case to take the usual course.   But for reasons satisfactory to themselves, they have chosen to substitute for the courts of law a private forum, and there is no injustice in holding them bound by the result.   In general, arbitrators have full power to decide upon questions of law and fact, which directly or incidentally arise in considering and determining the questions embraced in the submission.   (*Boston Water Power v. Gray, 6 Metc., 131.*)   And their decision upon such matters is conclusive.

The other exceptions relate to findings of facts by the arbitrators, about the correctness of which we can not, in the absence of testimony, form even a conjecture.

3. TRUSTEE: What deed must make to *cestui que trust.*

The decree directs that Kirten make a good and sufficient deed unto Spears.   This language ordinarily implies a deed with covenants of general warranty,   But Kirten is, upon the theory of the award, a mere trustee, holding the naked legal title for Spears.   And such a trustee can only be required to execute a deed of release to his *cestui que trust*, with covenants against acts done or suffered by himself.

Affirmed.