Jane DOE; Local No. 704 of the Amalgamated Transit Union; Paul Mathews, President, et al.
*v.* CENTRAL ARKANSAS TRANSIT

CA 93-713 900 S.W.2d 582

Court of Appeals of Arkansas
En Banc
Opinion delivered June 28, 1995
[Rehearing denied August 16, 1995.*]

*Pittman, J., would grant.

134

*Youngdahl, Sadin & McGowan*, by: *James P. O'Connor* and *Jay Thomas Youngdahl*, for appellants.

*Jack, Lyon & Jones, P.A.*, by: *Philip K. Lyon* and *Gary D. Jiles*; and *Kemp, Duckett, Hopkins & Spradley*, by: *Hal Joseph Kemp*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from the order of the Pulaski County Chancery Court which granted the appellee's motion for summary judgment and vacated an award granted by an arbitrator.

On January 3, 1995, we certified this case to the Arkansas Supreme Court pursuant to Rule 1-2(d)(2) of the Rules of the Supreme Court and Court of Appeals. The supreme court declined to accept the case and remanded it to this court for decision. Jurisdiction to determine the issues presented on appeal is therefore in this court.

Appellant, Jane Doe, was a bus driver for the appellee, Central Arkansas Transit Authority, which is a public transportation company. She was off work beginning January 4, 1991, through March 26, 1991, due to a job-related injury. Several days before her return to work, appellant took a return-to-work physical, including a drug test, pursuant to appellee's anti-drug policy. On March 26, 1991, appellant returned to work and, after completing work that day, was notified that her drug test was positive for cocaine and she was discharged.

The appellant's union filed a grievance on appellant's behalf pursuant to a collective bargaining agreement entered into between the union and the appellee in April of 1990. The union alleged that the appellant was not discharged for "just cause" under the terms of the parties' labor contract. The appellee refused to reinstate the appellant and the matter was submitted to arbitration pursuant to Article 4 of the agreement. The sole issue to be decided was whether appellant was discharged for "just cause." On November 12, 1992, the arbitrator issued an opinion ruling that although appellant had violated the anti-drug program, appellee did not have "just cause" to discharge her. The arbitrator reinstated appellant subject to another return-to-duty drug

test; random drug testing for five years; and the satisfactory completion of an Employee Assistance Program.

Appellee filed a complaint in Pulaski County Chancery Court to vacate the arbitrator's award alleging that there is a well-defined public policy against having drug-impaired employees in the work place; that there is a well-defined public policy against having drug users operate commercial vehicles such as a public transit bus; and that enforcing the arbitrator's award violates public policy.

On April 1, 1993, the chancellor entered an order granting the appellee's motion for summary judgment and vacated the award. This action was based upon a finding that the arbitrator's award reinstating appellant was contrary to public policy and that the arbitrator acted in excess of his authority.

On appeal, appellant argues: (1) the trial court failed to give proper deference to the arbitrator's findings; (2) the trial court erred in concluding the award violated public policy; (3) the trial court erred in concluding the award did not draw its essence from the labor agreement; and (4) the trial court erred in concluding the arbitrator exceeded his authority.

 At the outset, we note two things. One, our opinion is confined to the facts in this case and does not hold that a driver for a public transit company may drive a bus while under the influence of drugs. Second, the facts in this case were uncontested before the chancellor. Normally on a summary judgment appeal the evidence is viewed most favorably for the party resisting the motion and any doubts and inferences are resolved against the moving party. In a case where the parties agree on the facts that rule is inapplicable, and we simply determine whether the appellee was entitled to judgment as a matter of law. *City of Little Rock* v. *Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994). And because our Uniform Arbitration Act (Ark. Code Ann. §§ 16-108-201 — 16-108-224 (1987)) does not apply to employee-employer disputes, we look to prior Arkansas law, to the common law, and, at the parties' request, to the federal law for the resolution of the issues involved in this appeal.

## I. JUDICIAL DEFERENCE

 In the early case of *Kirten* v. *Spears*, 44 Ark. 166 (1884), our supreme court said unless the illegality of the deci-

sion appears upon its face:

> [T]he court will not interfere on the ground merely that the arbitrators have mistaken the law, or have advisedly decided contrary to the rules of established practice observed by courts of law and equity.
>
> . . . .
>
> If the parties wanted exact justice administered according to the forms of law, they should have allowed their case to take the usual course. But for reasons satisfactory to themselves, they have chosen to substitute for the courts of law a private forum, and there is no injustice in holding them bound by the result.

44 Ark. at 173-74 (citations omitted). In *Alexander* v. *Fletcher*, 206 Ark. 906, 175 S.W.2d 196 (1943), the court stated:

> The general rule and the one supported by the great weight of authority, with reference to awards is: "Every reasonable intendment and presumption is in favor of the award, and it should not be vacated unless it clearly appears that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers."

206 Ark. at 909-10 (citations omitted).

## II. PUBLIC POLICY

■ In *W.R. Grace & Company* v. *Local 759*, 461 U.S. 757 (1983), the United States Supreme Court recognized a public policy exception to the enforcement of an arbitrator's award. The Court stated:

> As with any contract, however, a court may not enforce a collective-bargaining agreement that is contrary to public policy. . . . Such a public policy, however, must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Citations omitted.)

461 U.S. at 766.

In *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29 (1987), the United States Supreme Court emphasized that the courts play only a limited role when asked to review the decision of an arbitrator. The Court stated:

> In *W.R. Grace*, we recognized that "a court may not enforce a collective-bargaining agreement that is contrary to public policy," and stated that "the question of public policy is ultimately one for resolution by the courts." We cautioned, however, that a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" In *W.R. Grace*, we identified two important public policies that were potentially jeopardized by the arbitrator's interpretation of the contract: obedience to judicial orders and voluntary compliance with Title VII of the Civil Rights Act of 1964. We went on to hold that enforcement of the arbitration award in that case did not compromise either of the two public policies allegedly threatened by the award. Two points follow from our decision in *W.R. Grace*. First, a court may refuse to enforce a collective-bargaining agreement when the specific terms contained in that agreement violate public policy. Second, it is apparent that our decision in that case does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy. Although we discussed the effect of that award on two broad areas of public policy, our decision turned on our examination of whether the award created any explicit conflict with other "laws and legal precedents" rather than an assessment of "general considerations of supposed public interests." At the very least, an alleged public policy must be properly framed under the approach set out in *W.R. Grace*, and the violation of such a policy must be clearly shown if an award is not to be enforced (citations omitted).

484 U.S. at 43.

■ We do not believe the arbitrator's decision in the

instant case violated public policy under the standards enunciated by the United States Supreme Court in *Grace* and *Misco*.

An Arkansas case cited by the appellee has recognized a public policy in favor of a drug policy which was initiated due to the high accident rate and risk factors relating to the nature of the drilling business and which prohibited an employee from having any detectable level of alcohol or drugs in the employee's body while on the employer's work site. *See Grace Drilling Co. v. Director of Labor*, 31 Ark. App. 81, 790 S.W.2d 907 (1990)(failing a required drug test constituted misconduct connected with the work for the purposes of unemployment benefits). And the parties cite and discuss a federal case that has recognized a public policy against the operation of a vessel while under the influence of drugs or alcohol. *See Exxon Shipping Co.* v. *Exxon Seamen's Union*, 993 F.2d 357 (3d Cir. 1993) (award reinstating helmsman terminated for a positive drug test taken after ship ran aground violates public policy expressed in Coast Guard Regulations requiring testing and providing that employees who test positive for drugs be denied employment as a crew member or removed from duties directly affecting the safety of the vessel's navigation or operations). Also, a federal case has recognized a public policy against the operation of potentially hazardous equipment and machinery by employees under the influence of illegal drugs. *See Georgia Power Company* v. *International Brotherhood of Electrical Workers, Local 84*, 707 F. Supp. 531 (N.D. Ga. 1989), aff'd, 896 F.2d 507 (11th Cir. 1990) (award reinstating chronic heavy drug user who had sufficient levels of THC metabolic in his body at the time of the drug screening to make it probable that he was under the influence of marijuana violated public policy). And a federal court has recognized that public policy requires strict adherence to nuclear safety rules. *See Iowa Electric Light and Power Company* v. *Local 204, IBEW*, 834 F2d. 1424 (8th Cir. 1987)(affirming the reversal of an award that reinstated an employee who intentionally violated federally mandated safety regulations defeating an interlock system [after being denied permission] for no better reason than to get an early start for lunch). *See also Delta Air Lines Pilots Assn. International*, 861 F.2d 665 (11th Cir. 1988) (public policy condemns operation of passenger airliner by pilots who are under the influence of alcohol contrary to FAA regulations).

We think the above factual situations are distinguishable from those in the instant case. The *Grace Drilling Company* case was not decided by an arbitrator and, therefore, the standard of deference given to the decision of an arbitrator was not required in that case. Also, that case involved the question of whether a discharged employee could draw unemployment benefits, and the case turned on employee misconduct not on public policy considerations with regard to enforcing an arbitrator's decision under a collective-bargaining agreement. The other cases involved situations where an employee was under the influence of drugs or alcohol while actually performing his duties or where the employee *intentionally* violated safety regulations.

■ But the appellant in the instant case did not actually drive a bus under the influence of illegal drugs. Moreover, the arbitrator found that the appellant was a good employee with a 10-year proven track record; that she was reliable, "year in and year out," a safe bus driver; that her "one recent miscue" was a one-shot aberration and occurred when she attended a party, the night before the drug test, at which she drank "spiked" punch; that there was no evidence of drug use on the job; and that it was possible to condition her reinstatement on adequate safety measures to protect bus riders and other vehicle occupants. The arbitrator recognized that public safety is "the most important consideration" and based appellant's reinstatement on certain conditions including random drug testing for a period of 60 months and the completion of an employee assistance program. He also stated that he would "without any apprehension" ride in a vehicle driven by the appellant.

## II. AUTHORITY OF ARBITRATOR

Because appellant's next two arguments are related, we discuss them together. The appellant contends the chancellor erred in concluding that the award did not draw its "essence" from the labor agreement and that the arbitrator exceeded his authority.

Article 2, Mutual Cooperation, Section 2 of the collective bargaining agreement states:

> The Company will continue to exercise the exclusive right to set its policies; . . . and to make reasonable rules and regulations governing the operation of its business and the conduct of its employees.

Article 3, Violation of Company Rules, Section 1 of the agreement states:

> A) No employee will be discharged or disciplined without sufficient and just cause. No employee will be discharged, disciplined, or taken out of service for violation of Company's rules for improper conduct without a fair and impartial hearing (except that the Company shall have the right to remove forthwith any employee against whom there is evidence of dishonesty beyond a reasonable doubt the same right applying to employees under the influence of intoxicating liquors or controlled drugs that are illegal by law).

Appellee's anti-drug policy is contained in Resolution No. 91-1 of the Board of Directors of Central Arkansas Transit Authority which was revised in January of 1991 to provide:

> Section 5. Any employee, or applicant for employment, of the Authority who fails to pass any required drug screening procedure shall be terminated and shall be prohibited from employment related to Central Arkansas Transit Authority.
>
> Section 6. All employees shall be subject to urine drug testing . . . :
>
> . . . .
>
> 4. Return to Duty. Prior to returning to duty after having refused a drug test, or after an on-the-job injury which results in a two week absence from duty. Those employees who refuse a drug test will be given an initial return to duty drug test and additional unannounced drug tests for a period up to 60 months. More than one refusal of a drug test will result in termination.

■ Unless the arbitral decision does not draw its essence from the collective bargaining agreement a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. *W.R. Grace & Co., supra.* An award draws its essence from the agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' inten-

tion; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law, may a reviewing court disturb the award. *Super Tire Engineering Co.* v. *Teamsters Local Union No. 676,* 721 F.2d 121 (3d Cir. 1983). Reviewing courts cannot interfere with an arbitrator's interpretation unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation. *International Brotherhood of Electrical Workers* v. *Sho-Me Power Corp.,* 715 F.2d 1322, 1325 (8th Cir. 1983).

■ The parties agree that the scope of the arbitrator's authority is a question of contract interpretation. Under the law, that is to be determined from reading the arbitration agreement, and the award will be set aside by the court only when the objecting party proves that the arbitrator clearly exceeded the power granted in the agreement. *State Auditor* v. *Minnesota Assn. of Professional Employees,* 504 N.W.2d 751 (Minn. 1993).

Here, Article 3 of the bargaining agreement provides that an employee shall not be discharged or disciplined without sufficient and just cause. Further, the agreement provides that an employee shall not be discharged, disciplined, or taken out of service without a fair and impartial hearing, except in the case of an employee against whom there is evidence of dishonesty beyond a reasonable doubt and employees *under the influence* of intoxicating liquors or controlled drugs that are illegal by law. However, the exception does not apply to employees who simply fail a drug test.

■ The appellant took a drug test on March 22 and it was not until she returned to work on March 26, and had driven the bus all that day, that she was told that her test on March 22 was positive. The arbitrator specifically found that "there was no evidence" of impairment of her job functions when she drove the bus on March 26. Thus, it is clear that under Article 3, the appellant could not be discharged forthwith because of the result of the drug test and could not be discharged after a hearing unless the positive test on March 22 constituted "just cause." Under the law discussed previously, the interpretation of the contract and the facts involved in the dispute are both matters to be determined by the arbitrator. *See Super Tire Engineering Co.* v. *Local 676, supra. See also,* Carnes, *Arbitration in Arkansas,* Arkansas Law Notes 17 (1992).

Although the arbitrator found there was not just cause to discharge appellant, he found just cause to discipline her. In making this determination the arbitrator took into account appellant's unblemished record of service and the fact that her positive drug test was a one-shot aberration, and he required random tests for five years. This was in keeping with the collective bargaining agreement since the policy adopted by appellee provided that "employees who refuse a drug test will be given an initial return to duty and additional unannounced drug tests for a period of up to 60 months."

We cannot conclude there was a "manifest disregard of the agreement," that the award did not draw its essence from the collective bargaining agreement, or that the arbitrator exceeded his authority.

We have considered the statement in the dissenting opinion that "appellee proposed a resolution to the collective bargaining agreement" and the dissent's leap from that statement to the implied conclusion that the union's failure to pursue its grievance contesting the implementation of the drug policy had the effect of changing the contract between the union and the appellee. But what actually happened was that the appellee adopted the resolution establishing an anti-drug policy *in keeping* with Article 2 of the contract. Although the union could have pursued its grievance as to the adoption of the policy, its failure to do so *did not* change the collective bargaining agreement between the union and the company. Thus, it was the arbitrator's job to interpret the bargaining agreement — which he did. Moreover, the arbitrator *did not* decide that the drug policy was unreasonable. He simply considered the issue of "just cause" to discharge the appellant under a provision of the agreement between the parties.

Also, we are not unmindful of appellee's argument that the arbitrator exceeded his authority because the parties stipulated that "the sole issue to be decided" by the arbitrator was "whether Jane Doe was discharged by Respondent for just cause, i.e. whether Jane Doe had violated the Anti-Drug Program for Employees." However, if the only issue to be decided was whether Ms. Doe failed the drug test, there was no need to submit this matter to arbitration. But, to say that is the only issue is to ignore the plain language of the collective bargaining agreement and

render it worthless. The fact of the matter is that the parties agreed to the "just cause" provision in their agreement and to the arbitration process, and we find no public policy under the specific factual circumstances here involved or in the interpretation of the contract by the arbitrator that would give the trial court authority to usurp the method selected by the parties to resolve their dispute in this case.

Reversed.

ROGERS, J., concurs.

PITTMAN, J., dissents.

JUDITH ROGERS, Judge, concurring. I concur with the majority decision because I believe the chancellor's act of vacating the award violated an important and recognized public policy of the state of Arkansas which favors arbitration as an alternative method of resolving disputes.

In Arkansas, arbitration is strongly favored by public policy and is looked upon with approval by courts as a less expensive and expeditious means of settling litigation and relieving congestion of court dockets. *Dean Witter Reynolds, Inc.* v. *Deislinger*, 289 Ark. 248, 251, 711 S.W.2d 771 (1986). After entering into an agreement to arbitrate a dispute, the parties have a moral and legal duty to abide by the award in the absence of a valid reason not to do so; simply being dissatisfied with the results is not a good reason to set aside the award. *Id.* Judicial review of an arbitration award is more limited than appellate review of a trial court's decision; whenever possible, a court must construe an award so as to uphold its validity. *Chrobak* v. *Edward D. Jones & Company*, 46 Ark. App. 105, 109, 878 S.W.2d 760 (1994). Every reasonable presumption is in favor of the award, and it should not be vacated unless it clearly appears that it was made without authority or was the result of fraud or mistake, or of misfeasance or malfeasance. *Id.; Niagara Fire Ins. Co.* v. *Boon*, 76 Ark. 153, 157, 88 S.W. 915 (1905). *Accord Kirten* v. *Spears*, 44 Ark. 166, 173 (1884).

The United States Supreme Court recognized the courts' limited role in reviewing arbitration decisions in *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 36 (1987). There, the Court stated that, if courts had the final

say on the merits of arbitration awards, the federal policy of settling labor disputes by arbitration would be undermined. The Court also stated:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. . . . [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

484 U.S. at 38.

It is clear that the public policy of the state of Arkansas favoring the enforcement of arbitration awards is as strong as that policy recognized by the federal courts. In accordance with this public policy, which limits the courts' scope of review of arbitration awards, I agree with the majority that the chancellor's decision must be reversed.

I must also stress that I have no doubt that the public policy of this state requires or should require that all bus drivers for agencies providing public transportation not be under the influence of cocaine while at work. I also believe that the safety of the public requires employers' policies to forbid the drivers' use of cocaine at any time, even while off duty, if there is even a remote chance that the drug might remain in the drivers' systems long enough to affect their driving.

If there is such a public policy, I believe appellee failed to adequately demonstrate it. At trial, appellee bore the burden of establishing this public policy by reference to the laws and legal precedents, and not from general considerations of supposed public interests. *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. at 44. If appellee had supplied sufficient evidence of a clearly-defined public policy on this issue, then our ques-

tion on review would be more clearly delineated and we would be faced more clearly with competing public policies.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent because I believe that the prevailing opinion has missed the point involved and fails to recognize longstanding precedent. I do not believe the chancellor erred in concluding that the award did not draw its essence from the labor agreement or that the arbitrator exceeded his authority.

In its original form, the collective bargaining agreement provided: "No employee will be discharged or disciplined without sufficient and just cause." Subsequently, appellee proposed a resolution to the collective bargaining agreement to promote an anti-drug program. The resolution provided: "Any employee, or applicant for employment, of the [Central Arkansas Transit] Authority who fails to pass any required drug screening procedure shall be terminated." The union filed a grievance contesting the implementation of the anti-drug program but abandoned its grievance. Because the union failed to pursue the grievance, the resolution containing the anti-drug program became effective on January 22, 1991. The collective bargaining agreement provided that, if an abandoned grievance has not been settled nor arbitration requested by the company or the union, the grievance is "forever barred and extinguished." The arbitrator stated that the issue before him was whether appellant Jane Doe was discharged for just cause when she failed a drug test. He acknowledged that he could not consider the union's protest against the anti-drug policy because the union dropped the earlier grievance. Appellants do not dispute that the union's failure to pursue the grievance rendered the implementation and terms of the drug program non-arbitrable. I think the majority opinion ignores the fact that the reasonableness of the drug policy (which required termination in this instance) was *not* an issue the arbitrator could decide.

An arbitrator's award draws its essence from the collective bargaining agreement so long as the interpretation can in some rational manner be derived from the agreement, viewed in the light of its language and context. *Id.* The award does not draw its essence from the collective bargaining agreement when the arbitrator apparently based his award on thought, feeling, policy, or law outside the contract. *Tootsie Roll Indus. Inc.* v. *Local*

*Union No. 1*, 832 F.2d 81 (7th Cir. 1987). I agree that every reasonable presumption should be in favor of the arbitrator's award, and it should not be vacated unless it clearly appears that it was made without authority or was the result of fraud or mistake. *Chrobak* v. *Edward D. Jones & Company*, 46 Ark. App. 105, 878 S.W.2d 760 (1994). However, if the arbitration award does not "draw its essence" from the contract, the reviewing court *must* vacate or modify it. *International Bhd. of Elec. Workers* v. *Sho-Me Power Corp.*, 715 F.2d 1322 (8th Cir. 1983); *see United Steelworkers of America* v. *Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960). Courts cannot interfere with an arbitrator's interpretation *unless* positive assurance exists that the contract is not susceptible to the arbitrator's interpretation. *International Bhd. of Elec. Workers, supra*. Additionally, when the arbitrator creates a contract term that does not exist in the bargaining agreement, he impermissibly administers "his own brand of industrial justice." *International Assoc. of Machinists and Aerospace Workers* v. *Lourdes Hosp., Inc.*, 958 F.2d 154 (6th Cir. 1992).

An arbitrator is commissioned to interpret and apply the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. *United Steelworkers* v. *Enterprise Wheel and Car Corp., supra*. Although the agreement provides that no employee will be discharged without "sufficient and just cause," the anti-drug policy clearly states that an employee who fails a drug test "shall be terminated." The arbitrator did not enforce the plain provisions of the anti-drug policy but instead rewrote the policy so that appellant Jane Doe would be disciplined rather than discharged. I believe the arbitrator had no authority to modify the discharge penalty and that the chancellor correctly held that the anti-drug policy and collective bargaining agreement were not susceptible to the arbitrator's interpretation.