Brenda Faye ROBBINS and Dale Robbins, her husband *v.*
Arthur JOHNSON, M.D., and Orthopaedics, P.A.,
D/B/A River Valley Musculoskeletal Center

06-163                                          241 S.W.3d 747

Supreme Court of Arkansas
Opinion delivered October 26, 2006

*Erwin L. Davis*, for appellants.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark* and *Sidney P. Davis, Jr.*, for appellees.

R OBERT L. BROWN, Justice. Appellants Brenda Faye Robbins and Dale Robbins, her husband, appeal from the circuit court's order dismissing their complaint against appellees Dr. Arthur Johnson, M.D. and Orthopaedics, P.A., d/b/a River Valley Musculoskeletal Center. They raise one point on appeal: the negligence they alleged against Dr. Johnson in their complaint was within a jury's comprehension as a matter of general knowledge, and, thus, the circuit court erred in dismissing their complaint. We disagree, and we affirm.

The Robbinses' complaint alleged the following facts. On March 26, 2003, Dr. Johnson performed cervical surgery in the neck of Mrs. Robbins at the Sparks Regional Medical Center in Fort Smith. The surgery performed was for the purpose of correcting a cervical disk herniation and osteophytes at the C4-5 and C5-6 levels of the spinal column. During the surgery, the com-

plaint alleged that Dr. Johnson "negligently caused and allowed a sharp surgical instrument, a curette, to fall and plunge into her spinal cord, piercing the dura mater surrounding the spinal cord, then piercing the spinal cord itself, resulting in damage to the spinal cord and nerves" of Mrs. Robbins. The complaint continued that Dr. Johnson closed the dural defect with a single suture without consulting her or her husband and without determining the extent of the spinal cord damage.

The Robbinses further alleged in their complaint that Mrs. Robbins has and will continue to suffer physical pain and mental anguish as a result of Dr. Johnson's negligence in performing the surgery. They asserted that she suffers from numbness and weakness in her hips and limbs. She also suffers from spasms in many of her muscles, joints, ligaments, nerves, and tendons. Mr. Robbins alleged that Dr. Johnson's negligence has caused him to lose the companionship and consortium of his wife.

According to Dr. Johnson, Mrs. Robbins underwent a cervical disectomy and fusion at levels C4-5 and C5-6. Dr. Johnson wrote to his attorney:

> However, during the course of the operative procedure the procedure was complicated by the fact that by using one of the curettes in trying to remove the posterior cervical osteophytes one osteophyte unexpectedly gave way. The area between the vertebral bodies was tight because of the osteophyte on inferior surface of C5 and the superior surface of C6 and in this process the osteophyte unexpectedly gave way allowing the curette to plunge forward penetrating the dura creating a small hole there and it was unclear as to whether spinal cord damage was incurred at that time.[1]

While Mrs. Robbins was hospitalized after the surgery, Dr. Johnson wrote in that same letter that he did not notice any significant neurological defects and that there was no evidence of damage to the spinal cord. At a follow-up visit, Dr. Johnson continued in the letter that on June 3, 2003, Mrs. Robbins complained of intermittent problems with spasms and pain. She was referred to a physical therapist for flexibility and muscle strengthening exercises and continued to receive frequent refills of

---

[1] According to Dr. Johnson's brief on appeal, an osteophyte is a bony excrescence or outgrowth, a curette is a spoon-shaped scraping instrument used for removing foreign matter from a cavity, and dura mater is the outer membrane covering the spinal cord.

pain medication. Mrs. Robbins's next visit with Dr. Johnson was on September 30, 2003. She told him at that time that she continued to have a significant amount of pain in her neck.

On March 10, 2005, Mr. and Mrs. Robbins sent notice to Dr. Johnson and his clinic, Orthopaedics, P.A., d/b/a River Valley Musculoskeletal Center, by certified mail, informing them of their intention to file a medical-malpractice action for the injuries that resulted from the cervical surgery. This notice was sent within thirty days of the expiration of the statute of limitations and served to toll the statute for ninety days. *See* Ark. Code Ann. § 16-114-212(a) (Repl. 2006). On June 22, 2005, within the ninety-day tolling period, Mr. and Mrs. Robbins filed their complaint against Dr. Johnson and his clinic. The complaint stated that an affidavit from an expert in the same or related field, as required by Ark. Code Ann. § 16-114-209(b) (Repl. 2006), was not necessary in this case, because Mrs. Robbins's damages "will be absolutely clear and unmistakable to a layperson."

Dr. Johnson and his clinic moved to dismiss the complaint and argued that the alleged negligence against Dr. Johnson did not lie within a jury's comprehension as a matter of common knowledge, and, therefore, an affidavit from an expert was required by law to be filed with the complaint. Because the complaint was filed without the required affidavit during the ninety-day tolling period, Dr. Johnson urged that the complaint be dismissed for failure to comply with Ark. Code Ann. § 16-114-212(c)(1) (Repl. 2006).

A hearing on the motion to dismiss was held. At the hearing, Dr. Johnson produced a letter for the court's review, which he had sent to his attorney on August 11, 2005, and which explained in detail what had happened during surgery. The letter was admitted into evidence, without objection by the Robbinses, together with the Sparks Regional Medical Center consent form that had been signed by Mrs. Robbins prior to the surgery. Dr. Johnson's attorney read from that letter in court during the hearing.

The circuit court granted the motion to dismiss with prejudice. In its order, the circuit court stated that the alleged negligence in the complaint did not lie within the jury's comprehension as a matter of common knowledge, and because the complaint had been filed during the tolling period without the required affidavit from an expert, the complaint must be dismissed with prejudice because the statute of limitations had expired. In making its decision, the circuit court said it was relying on Dr. Johnson's

motion to dismiss and his brief in support, the Robbinses' answer to the motion to dismiss and their brief in support, and "all exhibits produced at the hearing." From this order of dismissal, Mr. and Mrs. Robbins appeal.

Mr. and Mrs. Robbins claim, as their only point on appeal, that their complaint should not have been dismissed because Dr. Johnson's malpractice and the resulting damages are clear and unmistakable to a layperson, and, therefore, no expert affidavit was required. Specifically, they contend that the negligence complained of was the inadvertent plunging of the curette into Mrs. Robbins's spinal cord and that this was the result of "plain clumsiness easily understood by all juries."

We first consider whether the circuit court's order was an order for summary judgment or an order of dismissal. In the circuit court's order granting Dr. Johnson's motion to dismiss, the court stated that it considered the motion, answer, briefs in support, exhibits produced at the hearing, and all oral arguments made by the parties. By his own statement, the judge admitted that he went beyond consideration of the stated allegations in the complaint. For example, Dr. Johnson's letter to his counsel describing the surgery was introduced into evidence at the hearing as an exhibit, and the judge said in his order that he considered the exhibits in making his decision.

■ This court has said:

> When a trial court considers matters outside the pleadings, the appellate courts will treat a motion to dismiss as one for summary judgment. *Kyzar v. City of West Memphis*, 360 Ark. 454, 201 S.W.3d 923 (2005). A motion to dismiss is converted to a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002).

*T. J. ex rel. Johnson v. Hargrove*, 362 Ark. 649, 210 S.W.3d 79 (2005). We conclude that the circuit court's order of dismissal was, in truth, an order of summary judgment.

We turn then to a consideration of whether that order should be affirmed. In a medical-malpractice case, the plaintiff's burden of proof is fixed by statute:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

(2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

Ark. Code Ann. § 16-114-206(a) (Repl. 2006).

Further, the Medical Malpractice Code provides:

(b)(1) In all cases where expert testimony is required under § 16-114-206, reasonable cause for filing any action for medical injury due to negligence shall be established only by the filing of an affidavit that shall be signed by an expert engaged in the same type of medical care as is each medical care provider defendant.

Ark. Code Ann. § 16-114-209(b)(1) (Repl. 2006).

This court has discussed the issue of expert testimony in the past:

The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier v. Trammell,* 207 Ark. 372, 180 S.W.2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

*Haase v. Starnes,* 323 Ark. 263, 269, 915 S.W.2d 675, 678 (1996) (quoting *Davis v. Kemp,* 252 Ark. 925, 926, 481 S.W.2d 712, 712-13 (1972)).

Accordingly, it is well settled by § 16-114-206(a) and our case law that expert testimony is not necessary *per se* in every malpractice case but rather is needed only when the standard of care is not within the jury's common knowledge and when an expert is needed to help the jury decide the issue of negligence. *See Haase, supra.*

This court has held on multiple occasions that expert testimony was required because the alleged negligence did not fall within the common knowledge of the jury. *See, e.g., Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006) (expert testimony required to demonstrate to the jury why medical instructions from a specialist regarding a blood transfusion for a leukemia patient should have been followed by a family physician); *Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002) (directed verdict should have been granted for physician when the expert for the patient's estate failed to testify about what degree of skill is ordinarily possessed by surgeons in Little Rock when the negligence asserted was the physician's failure to perform surgery on a cancer patient suffering from free air on the abdomen until over thirteen hours after the physician learned of the surgery consult and the patient passed away during this time period); *Eady v. Lansford*, 351 Ark. 249, 92 S.W.3d 57 (2002) (expert testimony required to rebut defense testimony regarding whether a physician has a duty to inform a patient about rare side effects of medication); *Skaggs v. Johnson*, 323 Ark. 320, 915 S.W.2d 253 (1996) (medical decision to leave a piece of drainage tube in a patient's leg, as opposed to an inadvertent leaving of an object in a patient's body, presented an issue outside the jury's common knowledge and required expert testimony); *Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995) (matters relating to the changing of dental implants and treatment of fractured teeth are not matters of common knowledge to a jury); *Reagon v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991) (expert required to establish standard of care when physician failed to diagnose appendicitis); *Napier v. Northrum*, 264 Ark. 406, 572 S.W.2d 153 (1978) (branchial block procedure was not within the common knowledge of a jury of laymen, and the jury could not find that anesthesiologist was negligent in failing to warn the patient that a lung puncture might occur during the procedure where there was no expert testimony that would have permitted the jury to weigh various types of anesthesia to determine if a warning should have been given).

In the case at hand, Mr. and Mrs. Robbins claim that Dr. Johnson dropped the curette, which caused an injury to Mrs. Robbins's spinal cord, and that this negligence is within the common knowledge of a jury. However, Dr. Johnson's explanation of what happened, according to his letter to his attorney, is much different. He argues that the curette, which is spoon-shaped and not sharp, *may* have penetrated the spinal cord only after an osteophyte unexpectedly gave way. In other words, he contends that he did not merely drop the curette, but that any injury that may have occurred took place while he was removing an osteophyte with a curette.

We conclude that in order for a jury to decide whether Dr. Johnson was negligent, the jury must understand what a cervical diskectomy and fusion is, what instruments are used to perform the procedure, what procedures and risks are involved, and whether Dr. Johnson's actions proximately caused the injury alleged by the Robbinses. Dr. Johnson's letter makes it clear that, according to his version of the events, more was involved in this alleged negligence than simply dropping a sharp surgical instrument. We agree with the circuit court that an expert was required for Mr. and Mrs. Robbins to meet their statutory burden of proof.[2]

The question then is whether summary judgment was appropriate. This court has said that when a plaintiff fails to present expert testimony in a medical-malpractice case, that plaintiff's complaint is subject to a motion for summary judgment:

> In this case, appellee's motion for summary judgment was supported by affidavit revealing that appellant could not prove two essential elements of his claim. Appellee met his burden of proving a prima facie case for summary judgment by showing that appellant had no expert to testify as to the applicable standard of care and breach by appellee.

*Robson v. Tinnin*, 322 Ark. 605, 612, 911 S.W.2d 246, 250 (1995). Mr. and Mrs. Robbins did not produce any expert testimony to support their allegations of negligence. Because we conclude that Dr.

---

[2] Though negligence was also asserted for failure to obtain informed consent for correcting the dural defect in their complaint, the Robbinses did not pursue this argument on appeal. Thus, it is abandoned. *See Phillips v. Earngey*, 321 Ark. 476, 902 S.W.2d 782 (1995) (stating that this court will not address issues not raised on appeal).

Johnson has demonstrated that expert testimony is required in this case, no genuine issues of material fact exist, and Dr. Johnson is entitled to summary judgment as a matter of law. *See id.*

■ As a final point, because Mr. and Mrs. Robbins filed their complaint during the ninety-day tolling period without an expert's affidavit, their complaint was properly dismissed with prejudice. The General Assembly has made that point clear:

> (c)(1) If the plaintiff files an action for medical injury during this tolling period without the requisite affidavit required by § 16-114-209(b)(1) and (2), the complaint shall be dismissed and costs, attorney's fees, and appropriate sanctions as determined by the court shall be assessed.

Ark. Code Ann. § 16-114-212(c)(1) (Repl. 2006). In this case, Mr. and Mrs. Robbins filed their complaint during the tolling period without the required affidavit. The statute of limitations for their cause of action had expired. Judgment with prejudice was appropriately entered in favor of Dr. Johnson.

Affirmed.