2010 Ark. App. 693
**BANK OF THE OZARKS, Appellant**

v.

**JIM WOOD COMPANY, INC.**
**& Capital Dirtworks,**
**LLC, Appellees.**

**No. CA 10–19.**

Court of Appeals of Arkansas.

Oct. 20, 2010.

Stephen Barry Niswanger and Alexander Cale Block, Niswanger Law Firm PLC, Little Rock, for appellant.

Gary D. Corum, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

This appeal involves interpretation of a joint-check agreement among appellant Bank of the Ozarks (Bank) and its customer, appellee Capital Dirtworks, LLC (Dirtworks), a subcontractor, and the subcontractor's general contractor, appellee Jim Wood Company, Inc. (JWC).

JWC served as the general contractor on a construction project located in Tennessee. Dirtworks was a subcontractor on the project. Bank of the Ozarks loaned money to Dirtworks for the project. In January 2008, the project owner paid JWC $281,000. JWC issued a series of checks, distributing the $281,000, with each check made jointly payable to Dirtworks, the

Bank, and designated Dirtworks' suppliers or subcontractors.

On February 1, 2008, the Bank filed a complaint against JWC and Dirtworks, alleging the following causes of action: 1) breach of loan documents/indebtedness (against Dirtworks); 2) breach of joint-check agreement (against JWC); and 3) replevin (requesting order of delivery directing JWC to remit payment to the Bank). On February 20, 2008, JWC filed a motion to dismiss the Bank's complaint. A hearing on the motion was held on June 2, 2008. The initial order granting JWC's motion to dismiss was filed on August 1, 2008, and a subsequent appeal to this court was dismissed as not final and appealable because the claims against Dirtworks were still outstanding. On August 26, 2009, another order containing a Rule 54(b) certification was entered, but apparently the Bank did not receive notice or a copy of the final order, and the Bank's counsel did not learn of its entry until October 7, 2009, during a routine review of the file. The Bank then filed a motion for extension of time to file its notice of appeal, which the trial court granted and entered on November 5, 2009. The Bank then filed its notice of appeal on November 10, 2009. We affirm.

The Bank attached several documents to its complaint. For ease of reference, we set out portions of the pertinent documents at the outset of this opinion:

1) Subcontractor's Agreement between JWC and Dirtworks (May 9, 2007):

6. Subcontractor shall not assign this Agreement or any amounts due or to become due hereunder without written consent of the Contractor.

7. Subcontractor shall furnish at no additional cost to Contractor, Performance and Payment Bonds equal to the amount set forth in paragraph 2 to be provided within five (5) days following execution of this agreement. If Subcontractor is unable to procure Performance and Payment Bonds, he shall submit a complete list of his suppliers and/or subcontractors who will be providing material and/or labor for the operation of this subcontract together with executed Joint Payment Agreements, and shall submit with each periodic payment request waivers of lien from each supplier and/or subcontractor.

10. The covenants and conditions contained in this Agreement shall apply to and bind the parties, heirs, legal representatives, and assigns of the parties.

2) Commercial Security Agreement between Dirtworks and the Bank (May 17, 2007):

Specific Property Description:....

ASSIGNMENT OF MONIES DUE UNDER CONTRACT DATED MAY 9, 2007, BETWEEN CAPITAL DIRTWORKS, LLC ... AND JIM WOOD COMPANY, INC. ... FOR COVINGTON COMMONS RETAIL CENTER....

3) Assignment of Moneys Due Under Contract (May 17, 2007). This assignment is between the Bank and Dirtworks, and it is signed by JWC only in acknowledging "service of a copy of the above and foregoing assignment."

4) Joint-check agreement (May 17, 2007). This agreement is on Bank of the Ozarks letterhead. It is a "joint agreement, by and among Jim Wood Company, Inc., Capital Dirtworks LLC, and Bank of the Ozarks, dated May 9, 2007," and it provides in pertinent part:

In order to induce Bank of the Ozarks to enter into a loan agreement for capital expenditures with Capital Dirt-

works, *hereby offers as partial consideration its subcontractors agreement with Jim Wood Company, Inc.*

Therefore, as agreed by the parties, *Jim Wood Company, Inc. agrees to make Bank of the Ozarks a joint payee, along with Capital Dirtworks, on each and every monthly progress payment (each "Check," collectively the "Checks") which Jim Wood Company, Inc. presents arising out of the subcontractors agreement and drawn on the account of Jim Wood Company, Inc.* Such arrangement of Jim Wood Company, Inc., Bank of the Ozarks, and Capital Dirtworks shall continue indefinitely until such time as Jim Wood Company, Inc., Bank of the Ozarks, and Capital Dirtworks mutually agree to discontinue such agreement.

(Emphasis added.)

As our supreme court explained in *Robbins v. Johnson*, 367 Ark. 506, 510, 241 S.W.3d 747, 750 (2006):

We first consider whether the circuit court's order was an order for summary judgment or an order of dismissal. In the circuit court's order granting Dr. Johnson's motion to dismiss, the court stated that it considered the motion, answer, briefs in support, exhibits produced at the hearing, and all oral arguments made by the parties. By his own statement, the judge admitted that he went beyond consideration of the stated allegations in the complaint. For example, Dr. Johnson's letter to his counsel describing the surgery was introduced into evidence at the hearing as an exhibit, and the judge said in his order that he considered the exhibits in making his decision.

This court has said:

When a trial court considers matters outside the pleadings, the appellate courts will treat a motion to dismiss as one for summary judgment. A motion to dismiss is converted to a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court.

We conclude that the circuit court's order of dismissal was, in truth, an order of summary judgment.

(Citations omitted.)

Here, in the order granting JWC's motion to dismiss, the trial court stated:

After consideration of the *motions, briefs, exhibits, and authorities* submitted by the parties in connection with the Defendant's Motion, and after hearing arguments of counsel for the parties, the Court took the Defendant's Motion under advisement and granted permission for Jim Wood Company to file a post-hearing brief, which was submitted to the Court on June 5, 2008.

*Based on all of the foregoing,* the Court now finds and concludes that Defendant's Motion to Dismiss the causes of action alleged against Jim Wood Company in the Complaint filed by Bank of Ozarks should be, and it is hereby granted. The Court concludes that the Bank has failed to state facts upon which the relief it has demanded against Jim Wood Company can be granted. The matter is ripe for adjudication on a motion to dismiss because the core issues are presented on the face of the Complaint and the exhibits the Bank incorporated in its Complaint.

IT IS THEREFORE ORDERED that the Complaint of the Bank of the Ozarks as against Defendant Jim Wood Company, Inc. is hereby *dismissed with prejudice.*

(Emphasis added.) Similar to the result in *Robbins, supra,* we conclude that the or-

der of dismissal in this case is actually an order of summary judgment because the trial court considered matters outside the pleadings and dismissed the complaint with prejudice.

■ "Normally on a summary judgment appeal the evidence is viewed most favorably for the party resisting the motion and any doubts and inferences are resolved against the moving party. In a case where the parties agree on the facts that rule is inapplicable, and we simply determine whether the appellee was entitled to judgment as a matter of law." *Doe v. Central Arkansas Transit*, 50 Ark.App. 132, 136, 900 S.W.2d 582, 583–84 (1995).

There are no material facts in dispute. Quite simply, this case hinges primarily upon the emphasized language of the joint-check agreement because it is the only agreement to which JWC and the Bank were both parties.

■ In regard to the construction of terms in an agreement, the initial determination of the existence of an ambiguity rests with the trial court. *Surratt v. Surratt*, 85 Ark.App. 267, 148 S.W.3d 761 (2004). When a contract is unambiguous, its construction is a question of law for the court. *Id.* A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *Id.* When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.* Consequently, as in *Doe, supra,* our task in the instant case will be to determine whether JWC was entitled to judgment as a matter of law.

Of all of the documents attached to the Bank's complaint, the joint-check agreement is the only agreement to which both JWC and the Bank were actually parties. It is a "joint agreement, by and among Jim Wood Company, Inc., Capital Dirtworks LLC, and Bank of the Ozarks, dated May 9, 2007," and it provides in pertinent part:

> In order to induce Bank of the Ozarks to enter into a loan agreement for capital expenditures with Capital Dirtworks, *hereby offers as partial consideration its subcontractors agreement with Jim Wood Company, Inc.*
>
> Therefore, as agreed by the parties, *Jim Wood Company, Inc. agrees to make Bank of the Ozarks a joint payee, along with Capital Dirtworks, on each and every monthly progress payment (each "Check," collectively the "Checks") which Jim Wood Company, Inc. presents arising out of the subcontractors agreement and drawn on the account of Jim Wood Company, Inc.* Such arrangement of Jim Wood Company, Inc., Bank of the Ozarks, and Capital Dirtworks shall continue indefinitely until such time as Jim Wood Company, Inc., Bank of the Ozarks, and Capital Dirtworks mutually agree to discontinue such agreement.

(Emphasis added.)

The language of this agreement is not ambiguous because it is not susceptible to more than one equally reasonable construction. By the terms of the agreement itself, JWC made one promise to the Bank—to list it as a joint payee on "each and every monthly progress payment which Jim Wood Company, Inc. presents arising out of the subcontractors agreement and drawn on the account of Jim Wood Company, Inc." Exhibit H to the Bank's complaint identifies the checks in dispute, all of which show the Bank as a joint payee. The Bank does not contest that fact. In fact, it acknowledges in its complaint that it had permitted some pre-

vious checks to be made jointly payable to Dirtworks, the Bank, and other subcontractors or suppliers. What the Bank alleges in its complaint is:

22. The Joint-check agreement is a valid contract under which Wood is obligated to make checks for the Monies payable jointly *only* as to the Bank and Dirtworks. Wood is not supposed to include suppliers and subcontractors as additional joint payees because this defeats the purpose of the Joint-check agreement.

23. In addition, Wood is obligated to permit the Bank to "apply the payment of any debt, obligations, and liabilities of Capital Dirtworks under this Agreement, in such order of application as Bank of the Ozarks may elect, any and all balances, credits, deposits, accounts, or monies of Capital Dirtworks then or thereafter with or payable to Bank of the Ozarks." See Ex. F.

(Emphasis added.) The problem with the Bank's assertion in paragraph 22 is that it is not what JWC agreed to do in the joint-check agreement. The only duty assumed by JWC in the joint-check agreement was to make the Bank a joint payee, which it did. If the Bank wanted JWC to agree to the Bank being the sole and only joint payee besides Dirtworks, it should have added that provision in the joint-check agreement. The joint-check agreement is Exhibit F to the Bank's complaint, referenced in paragraph 23. But, the provision quoted in paragraph 23 of the complaint omits a key introductory clause: *"Capital Dirtworks agrees* that Bank of the Ozarks shall have the right to apply to the payment of any debt. . . ." (Emphasis added.) That is, it was Dirtworks, not JWC, that made that agreement. As noted by JWC in its brief to this court, there is no "fact" to support a claim for breach of the joint-check agreement. There is only a conclu-

sory allegation that there has been a breach of that agreement, which is immediately belied by the actual document.

Within this context, we now address the points raised by the Bank in this appeal.

### I.

■■ The Bank contends that JWC did not hold monies due under its subcontract with Dirtworks in trust for Dirtworks' laborers and suppliers. We agree with JWC that this argument was not essential to the trial court's ruling and conclude that JWC satisfied its obligations under the joint-check agreement by listing the Bank as a joint payee—and that JWC did not breach that agreement by also adding other joint payees who were subs/suppliers.

■■ Exhibit H attached to the Bank's complaint, is an e-mail from JWC's counsel, which was written before the Bank filed its complaint. It provides in pertinent part:

I lack encyclopedic knowledge at this point, but it appears to me that Capital Dirtworks may have subbed out most if not all of the supplies and work that was included in Capital's subcontract with my client. *It appears to me that the Bank is in a position to lay claim to payments actually due to Capital Dirtworks, but I have seen nothing that leads me to believe that the Bank can somehow claim a superior right to monies due to the actual materials-suppliers or to Capital's subcontracting parties, rather than the Bank's debtor.*

I want you to understand that JWC merely seeks, to the best of its knowledge and ability, to insure that folks who have actually provided materials, labor, or services on the project are properly paid for what they have provided. Once that is done, if Capital Dirtworks is entitled to payment in amounts sufficient to discharge its obligations to the Bank,

great. But neither JWC nor the owner are willing to make unfettered payments to Capital or the Bank and then face claims and liens asserted by folks who have provided materials or services but did not get paid by Capital Dirtworks. So, to the best of our ability, we intend to issue checks payable to Capital and the Bank, but also payable jointly to various suppliers, vendors or subcontractors, as their interests appear.

(Emphasis added.) Dirtworks assigned to the Bank its "rights" under the subcontractors' agreement that it had with JWC as security for a loan that Dirtworks received from the Bank. However, that assignment—of which JWC acknowledged receipt only but was in no way a |9party—did not guarantee that Dirtworks would be entitled to sums under its subcontractor's agreement that it was not otherwise entitled to, *i.e.*, monies for work done by its own subs/suppliers. In fact, paragraph 7 of the subcontractor's agreement provided in part: "If subcontractor is unable to procure performance and payment bonds, he shall submit a complete list of his suppliers and/or subcontractors who will be providing material and/or labor for the operation of this subcontract together with executed Joint Payment Agreements, and shall submit with each periodic payment request waivers of lien from each supplier and/or subcontractor."

## II.

■ The Bank further contends that JWC signed the assignment of funds and the joint-check agreement and could not exceed the authority thereof. As we have earlier concluded, JWC did *not* sign the assignment of funds as a party; rather, it only signed an acknowledgment of receipt of the assignment. The Bank's assertions attempt, unsuccessfully, to merge the two agreements and thereby obligate JWC in ways that it never agreed.

## III.

The Bank next contends that the subcontract between JWC and Dirtworks did not contain a "right to withhold funds due" provision. Again, this seems to be an argument designed more to confuse the issues than clarify what is actually involved. JWC notes paragraph 7 of the subcontractor's agreement, but contends that it is not relevant to this case "because JWC did not 'withhold' any funds.... JWC tendered checks in the full amount the |10Bank sought, with both the Bank and Dirtworks listed as joint payees. As JWC advised the Bank in the tender offer, even though JWC had good cause to believe that Dirtworks was not itself entitled to any of the monies in question, JWC nonetheless listed both Dirtworks and the Bank as joint payees."

## IV.

■ The Bank finally contends that "due process may be an issue." The Bank's argument under this point contends that the only items JWC was to address in its posthearing brief were its responses to the cases cited by the Bank to the trial court during the hearing—*Cherokee Carpet Mills, Inc. v. Worthen Bank & Trust Co.*, 262 Ark. 776, 561 S.W.2d 310 (1978) and *In re Bass Mechanical Contractors, Inc.*, 84 B.R. 1009 (1988)—and that to the extent JWC raised additional arguments or relied upon additional matters not originally argued, that the Bank should have been given an opportunity to respond. Because the trial court never responded to the Bank's letter requesting the opportunity to respond, it contends that it would be a violation of due process for this court to rely upon any of those matters in deciding this case. This issue was not raised below. We do not address arguments raised for the first time on appeal. *Potter v. City of*

*Tontitown*, 371 Ark. 200, 264 S.W.3d 473 (2007).

Affirmed.

VAUGHT, C.J., and BAKER, J., agree.