Jerry M. SURRATT *v.* Barbara Joe SURRATT

CA 03-863                                    148 S.W.3d 761

Court of Appeals of Arkansas
Division I
Opinion delivered February 25, 2004

*James R. Wallace & Associates,* by: *Kimberly Bossheart,* for appellant.

*Jeanette Stephens Heimbaugh, P.A.,* for appellee.

ANDREE LAYTON ROAF, Judge. Jerry M. Surratt appeals from the trial court's order interpreting a provision in the parties' 1988 settlement agreement that pertained to the division of his military retirement benefits. The trial court found that the agreement required Jerry to continue paying appellee Barbara Joe Surratt a sum equal to one-half of the amount of his military retirement income as of the time of the parties' 1988 divorce, despite the fact that Jerry's disability rating had been subsequently increased to 100%, with a resulting change in his monthly income to 100% disability pay. On appeal, Jerry argues that the trial court erred in construing the property-settlement agreement as obligating him to make monthly payments to Barbara, even though he receives only military disability benefits, because: (1) the Uniformed Services Former Spouses' Protection Act (Act) prohibits it; (2) Barbara has remarried, and thus, is ineligible for alimony; (3) the property-settlement agreement, having been drafted by Barbara's attorney, should have been construed against her. We affirm on all points.

The parties entered into a property-settlement agreement that was incorporated into their 1988 divorce decree. At the time of the divorce, appellant Jerry Surratt was drawing both military retirement and disability benefits, having been rated 20% disabled. The settlement agreement provided in part:

> Barbara shall be entitled to receive one-half of Jerry's military monthly retirement income as it was at the time of the Complaint for Divorce being filed and that should there be any cost of living increases that Barbara will be entitled to one-half of the same. That the said retirement income will not fall below the amount that Jerry was receiving at the time of filing this suit even if Jerry's disability retirement increases. Jerry will receive 100 per cent of the monthly

retirement income that is related to and labeled as disability income and Barbara shall receive one-half of the balance of the monthly retirement income as stated above as well as any increases thereto but never will receive less than the amount that Jerry is receiving as of the day of the Complaint being filed and that Barbara will be paid directly from the U.S. Government, if possible ~~and in the event that the regular retirement reduced below the amount Jerry is receiving at the time of filing then Jerry shall pay the difference.~~

The parties placed their initials beside the phrase that was marked out, which stated: "and in the event that the regular retirement reduced below the amount Jerry is receiving at the time of filing then Jerry shall pay the difference."

The Department of Veterans Affairs notified Jerry in July 2001 that he had received a 100% disability rating, retroactive to November 2, 2000, and that he would henceforth receive an increase in his disability benefits with a concurrent termination of his military retirement pay.[1] Barbara received her share of Jerry's retirement benefits until August 2001, after which she received nothing. Barbara filed a petition for citation of contempt against Jerry in January 2002 and sought judgment for the arrearages. In response, Jerry argued that, according to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2000 and Supp. I), Barbara was ineligible for any share of his disability income, and that, because she had remarried, she could not receive alimony.

At the hearing, both parties testified about their understanding of the property-settlement agreement. Barbara testified that she had believed that Jerry would be obligated to continue paying her at least as much as she received at the time of the divorce, even if Jerry later received only disability pay. She said that Jerry had, in fact, told her that the agreement obligated him to do so. She also stated that her attorney had explained to her that the phrase that had been marked through had the same effect as the preceding sentences. Jerry testified that he is now receiving 100% disability income of $2,229 per month and that his understanding was to the contrary, that, if the "government" could not pay Barbara directly,

---

[1] To receive disability benefits, a military retiree must waive the corresponding amount of retired pay. Because disability benefits are exempt from federal, state, and local taxes, there is an incentive to waive retired pay in favor of disability pay. *See Mansell v. Mansell*, 490 U.S. 581 (1989).

she would not get anything. The trial court ruled that the property-settlement agreement, which became part of the divorce decree, guaranteed a minimum payment to Barbara and anticipated that Jerry would continue to receive his disability payments. The trial court entered an order awarding judgment in the amount of $5,976.95 to Barbara for the arrearages and finding that the property-settlement agreement obligated Jerry to make monthly payments of $483 until the arrearages are paid and, thereafter, monthly payments of $383, representing one-half of the amount of the retirement pay at the time of the divorce decree. That order is the basis for this appeal.

■ The standard of review in equity cases is *de novo*. *Tyson Foods, Inc. v. Conagra, Inc.*, 349 Ark. 469, 79 S.W.3d 326 (2002). We review both law and fact and, acting as judges of both law and fact as if no decision had been made in the trial court, sift the evidence to determine what the finding of the trial court should have been and render a decree upon the record made in the trial court. *Id*. The trial court's findings of fact will not be reversed unless they are clearly erroneous. *Id*.

■■ In Arkansas, military-retirement benefits are marital property. *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). In 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act, which provides that a court may treat disposable "retired pay" as the property of the member and his spouse in accordance with the law of the jurisdiction of that court. 10 U.S.C. § 1408(c)(1). The United States Supreme Court held in *Mansell v. Mansell*, 490 U.S. 581 (1989), that the Act excludes from division in divorce military retired pay that has been waived to receive veterans' disability benefits, leaving the state courts free to divide only "disposable" retired pay.

Since *Mansell*, a number of Arkansas cases have addressed issues relating to division of assets where one of the parties to a divorce is receiving veterans' disability benefits. In *Murphy v. Murphy*, 302 Ark. 157, 787 S.W.2d 684 (1990), the husband's entire military pension was drawn as disability payments amounting to $1,554 per month, and the chancellor noted this fact in ordering him to pay $361 per month to the wife. On appeal, the husband argued that the chancellor erred in requiring him to pay alimony out of his disability benefits. Although it agreed that the wife was not entitled to direct payments for alimony under the Act, because the husband had no disposable retirement pay as

defined in that Act, and his disability benefits were unavailable to the wife for alimony payments; the Arkansas Supreme Court rejected his argument. It stated: "Even so, such conclusions do not preclude the trial court from ordering appellant to pay alimony, and once awarded, the FSPA does not relieve a retiree from paying such alimony obligations. See 10 U.S.C. § 1408(d)(6) (1982)." 302 Ark. at 159, 787 S.W.2d at 685.

In *Womack v. Womack*, 307 Ark. 269, 818 S.W.2d 958 (1991), the Arkansas Supreme Court affirmed the chancery court's award of a $19,402 judgment to the wife and its finding that the husband was in contempt of the prior 1985 divorce decree, which had stated that the husband was to pay the wife $425 per month, one-half of the husband's military disability benefits, as permanent alimony "in lieu of her right to receive said amount as a distribution of marital property." 307 Ark. at 269-70, 818 S.W.2d at 959. On appeal, the husband argued that the chancellor had actually made a property division of his disability benefits in violation of the Act. Citing *Murphy v. Murphy, supra,* the supreme court disagreed, noting that the chancellor had made an award of alimony and nothing more; he did not order a division of the husband's benefits, nor did he direct that alimony be withheld from them. The court held that the Act's exclusion of disability benefits from division or alimony does not prevent a trial judge from awarding alimony or relieve a military retiree of satisfying that obligation.

We dealt with the Act in *Hapney v. Hapney*, 37 Ark. App. 100, 824 S.W.2d 408 (1992). After twenty-four years of marriage, the parties were divorced, and the husband's military retirement was found to be marital property subject to division. By agreement of the parties, the wife was awarded $300 per month as her share of his retirement pay. Later, the husband's disability benefits were increased, causing a concomitant reduction in his military retirement pension. After the husband elected to take an increase in his disability benefits, which caused his retirement benefits to be reduced to $400 per month, the direct payments to the wife were reduced to $200, pursuant to the terms of the Act. The wife filed a petition for contempt in the chancery court, and the chancellor found the husband in contempt and entered a judgment for the arrearages.

One of the husband's arguments on appeal was that the chancellor violated the Act by awarding the wife military retirement pay that he had waived in order to receive disability benefits. We disagreed, explaining:

> We find no merit to this contention. Although the United States Supreme Court has held that the Uniformed Services Former Spouse's Protection Act does not permit state courts to treat certain military retirement pay, waived by the retiree in order to receive (or increase) Veteran's disability benefits, as property divisible upon divorce, *Mansell v. Mansell*, 490 U.S. 581 (1989), the appellant's argument lacks merit because the record in the case at bar does not demonstrate that the $300.00 per month award constituted a division of his Veteran's disability benefits. The divorce decree did not purport to award the appellee a portion of the appellant's disability benefits, but instead was limited to the appellant's military retirement benefits. Moreover, as noted earlier, in the order appealed from the chancellor found that the appellee's agreement to accept $300.00 per month, in lieu of the larger amount to which she was entitled, was made in consideration of concessions made in the parties' overall property settlement, including other matters relating to the division of marital property and alimony. Because the parties' original agreement, as submitted to the chancellor and incorporated into his decree, has not been included in the abstract before us, we are unable to determine the percentage of the $300.00 award which was based on military retirement benefits, as opposed to other consideration, or to say that the chancellor erred in so construing the agreement of the parties. Under these circumstances, we regard the chancellor's action as a clarification of the award which was originally intended, rather than a modification, and the appellant has presented no evidence demonstrating that the chancellor's interpretation is clearly erroneous. *See Ford v. Ford*, 30 Ark. App. 147, 783 S.W.2d 879 (1990). Based on this record, we cannot say that the chancellor's interpretation of the decree is clearly wrong, and we affirm.

37 Ark. App. at 102-03, 824 S.W.2d at 409-10.

The supreme court dealt with the Act again in *Ashley v. Ashley*, 337 Ark. 362, 990 S.W.2d 507 (1999). The parties were divorced in 1994, and the wife was awarded alimony of $90 per month and one-half of the husband's disposable military retirement pay as her share of the marital property. At the time of the divorce, the husband was rated 30% disabled and received disabil-

ity benefits. He appealed from that rating and ultimately was rated as 100% disabled. He chose to waive his retirement pay so that he could receive full disability benefits, which reduced his disposable retirement pay to $30 and caused the government to stop sending payments to the wife. The wife filed a complaint in chancery, seeking reinstatement of the $428.25 payment previously ordered and for arrearages. In the alternative, she pled that, if such relief was denied, her original alimony award should be increased. Relying on *Hapney v. Hapney, supra,* the chancellor reinstated the $428.25 payments and awarded her $5,396.65 in arrearages. On appeal, the supreme court held that the chancellor had violated the Act in enforcing the wife's originally-assigned share of the husband's disposable retirement pay. However, it remanded the case to permit the trial court to consider the wife's request for an increase in alimony.

We find *Ashley v. Ashley* to be distinguishable from this case because, in *Ashley,* there was no indication that the parties entered into a property-settlement agreement. Here, the parties did enter into such a contract, and Barbara's bargained-for property rights flowing from that contract are the basis for her claim.

Thus, in the Arkansas cases in which such payments were ordered to be continued, they were deemed to be alimony, or alimony was used as a replacement for their termination. The next question, therefore, is whether such payments may be continued in situations such as this, where the payments are not in the nature of alimony but, instead, are periodic distributions of marital property pursuant to a settlement agreement.

We believe that there is a sound basis for concluding that, in this case, the payments should be continued. Since *Mansell v. Mansell, supra,* was decided, postjudgment waivers of retirement pay have caused problems for courts across the nation, *see Krempin v. Krempin,* 70 Cal. App. 4th 1008, 83 Cal. Rptr. 2d 134 (1999), and there is a growing trend to ensure that former spouses' property interests are protected in the event of a future award of disability benefits to the service member. *Id.* A majority of state courts, on one theory or another, take equitable action to compensate the former spouse when that spouse's share of the retirement pay is reduced by the other spouse's postjudgment waiver of retirement benefits. *Id.* In some cases, the contracts contain indemnity provisions, and the courts have given the spouse the benefit of the original bargain or order with respect to retirement

pay, even if the service member's disability benefits would be a source of the payments. *Id.* Because the service member is free to satisfy the indemnity obligation with assets other than the disability benefits, there is no division of those benefits in contravention of *Mansell v. Mansell, supra. Id.*; *see Scheidel v. Scheidel,* 129 N.M. 223, 4 P.3d 670 (Ct. App. 2000).

■ Even in the absence of indemnity provisions, the courts have reached the same result, finding that the service member has breached the agreement and should not be permitted to profit by that breach. In such cases, the following statement is typical:

> The judgment in this case does not divide the defendant's VA disability benefits in contravention of the *Mansell* decision; the judgment merely enforced the defendant's contractual obligation to his former wife, which he may satisfy from any of his resources. Nothing in 10 U.S.C. § 1408 or in the *Mansell* case precludes a veteran from voluntarily entering into a contract whereby he agrees to pay a former spouse a sum of money that may come from the VA disability benefits he receives..

*Krapf v. Krapf,* 439 Mass. 97, 108, 786 N.E.2d 318, 326 (2003); *accord Abernethy v. Fishkin,* 699 So. 2d 235 (Fla. 1997). Generally, such cases hold that, when a settlement agreement divides military retirement benefits, the nonmilitary spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree. *See Johnson v. Johnson,* 37 S.W.3d 892 (Tenn. 2001). That vested interest cannot thereafter be unilaterally diminished by an act of the military spouse. *Id.*; *accord Harris v. Harris,* 195 Ariz. 559, 991 P.2d 262 (Ct. App. 1999); *Dexter v. Dexter,* 105 Md. App. 678, 661 A.2d 171 (1995); *see also Hillyer v. Hillyer,* 59 S.W.3d 118 (Ct. App. Tenn. 2001).

■ In light of these decisions, we reject Jerry's argument that the trial court's action violated the Act. In this case, the settlement agreement, divorce decree, and the trial court's order of enforcement did not purport to divide his disability benefits. Therefore, the Act and *Mansell v. Mansell* were not violated, and the nature of the sources with which Jerry may satisfy his contractual obligation to Barbara are beside the point. When the parties entered into the settlement agreement, Barbara received a vested property interest in her right to a portion of Jerry's retirement

benefits. Jerry could not, by later waiving those benefits in order to receive disability payments, unilaterally deprive Barbara of her property. Thus, we affirm the trial court's interpretation of the settlement agreement and its enforcement of Barbara's rights pursuant to it.

■ Characterizing the payments at issue as alimony, Jerry also argues that Barbara cannot receive them because she has remarried. It is true that Ark. Code Ann. § 9-12-312(a) (Repl. 2002) states in relevant part that, when a decree is entered that orders the payment of alimony, unless otherwise ordered by the court or agreed to by the parties, the liability for alimony shall automatically cease upon the remarriage of the person who was awarded the alimony. However, the payments at issue are not equivalent to alimony. The settlement agreement, divorce decree, and the order from which this appeal arises did not refer to alimony. Instead, these payments are properly characterized as periodic distributions of marital property. *See Johnson v. Johnson, supra*. We therefore reject this argument.

### Construction of the Agreement

■ ■ In his third and final point, Jerry argues that the settlement agreement is ambiguous because of the phrase that was marked out and thus, having been drafted by Barbara's attorney, must be construed against her. Questions relating to the construction, operation, and effect of such agreements are governed, in general, by the rules and provisions applicable in the case of other contracts generally. *Sutton v. Sutton*, 28 Ark. App. 165, 771 S.W.2d 791 (1989). The trial court has the power to construe, clarify, and enforce the parties' settlement agreement. *See Rogers v. Rogers*, 83 Ark. App. 206, 121 S.W.3d 510 (2003); *Grider v. Grider*, 62 Ark. App. 99, 968 S.W.2d 653 (1998). In regard to the construction of terms in an agreement, the initial determination of the existence of an ambiguity rests with the trial court. *Pittman v. Pittman*, 84 Ark. App. 293, 139 S.W.3d 134 (2003). When a contract is unambiguous, its construction is a question of law for the court. *Fryer v. Boyett*, 64 Ark. App. 7, 978 S.W.2d 304 (1998). A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *Id.* When contracting parties express their intention in a written instrument in clear and unambiguous

language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Pittman v. Pittman, supra.*

While this property-settlement agreement may not be a model of clarity, *see Johnson v. Johnson, supra,* we do not believe that it is ambiguous. In our view, even without the clause that was redacted, it is susceptible to only one reasonable construction: that Jerry is obligated to pay Barbara, at a minimum, one-half of the amount that he was receiving as retirement pay at the time of the divorce, regardless of whether he continues to draw "disposable retired pay," as defined in the Act. Barbara was to receive payment directly from the government "if possible." However, Jerry assumed a personal obligation to continue these periodic distributions of marital property to Barbara, even if they could not legally be paid directly by the military. We hold that the settlement agreement unambiguously requires Jerry to continue these payments, and because the agreement is not ambiguous, it need not be construed against Barbara.

Affirmed.

HART and CRABTREE, JJ., agree.