SLIP OPINION



Cite as 2015 Ark. App. 571

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-741

| | |
|---|---|
| EDWARD EDMONDSON<br>APPELLANT | **Opinion Delivered** October 21, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. 60DR-88-1804] |
| PENNY EDMONDSON-LOCKETT<br>APPELLEE | HONORABLE MORGAN E. WELCH, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Edward Edmondson appeals the order from the Pulaski County Circuit Court directing him to pay Penny Edmondson-Lockett thirty-two percent of his pension benefits and finding him in contempt of court. On appeal, Edmondson argues that the circuit court erred in (1) awarding Lockett more of his pension than the parties' divorce decree provides and (2) finding him in contempt. We affirm.

Edmondson and Lockett divorced in December 1988. Paragraph 10 of the divorce decree provides that

> [o]n the date of trial, [Edmondson] had an accrued, deferred vested pension plan, under which benefits will be paid, to him through his employer, Southwestern Bell Corporation at the time of retirement. On the date of trial for final Decree of Divorce, [Lockett] had a calculated marital property right and interest of thirty-two percent (32%) of [Edmondson's] accrued and vested deferred pension. At such time as [Edmondson] retires and begins drawing the pension from his pension fund account, [Lockett] will be paid a sum equal to thirty-two percent (32%) of the monthly pension

amount paid to [Edmondson] through Southwestern Bell Corporation, at the time of his retirement.

On June 2, 1998, Lockett petitioned the circuit court to order Edmondson to file a qualified domestic relations order ("QDRO") so that Southwestern Bell would set aside and pay benefits to her when Edmondson retired. On September 4, 1998, the circuit court ordered that a QDRO be executed.

On March 2, 2011, Lockett filed a petition for citation for contempt. In the petition, she asked the court to hold Edmondson in contempt for failing to follow the divorce decree in several respects. She additionally requested that a QDRO be reinstated with AT&T, formerly Southwestern Bell.[1] On April 25, 2012, the court found that Edmondson was not in contempt but ordered that a QDRO be issued.

On December 23, 2012, Lockett filed a motion for enforcement of orders and citation for contempt, alleging that Edmondson had retired from AT&T in December 2012 and had received pension payments but had failed to pay her thirty-two percent of the monthly payments. She asked the court to order Edmondson to pay her thirty-two percent of the monthly pension payments and to hold Edmondson in contempt for willfully failing to pay her.

On March 27, 2014, the circuit court held a hearing on the motion. Edmondson testified that he had retired on August 18, 2013, and that he had received his first pension

---

[1]In her petition, Lockett requested that a QDRO be "reinstated" with Southwestern Bell; however, it is unclear to this court whether a QDRO was ever issued prior to the filing of the petition. The only QDRO in the record is dated April 8, 2014.

payment in September 2013. He testified that he was receiving $1500 a month in retirement benefits. He stated that he was unaware that the 1988 divorce decree awarded Lockett a percentage of his pension so he did not pay Lockett upon his retirement. He further stated that he had not seen a QDRO that had been submitted to the court for his signature. Lockett testified that she thought Edmondson had retired in December 2012. She asked the court to approve a QDRO so that she could send it to Fidelity Investments for allocation of the pension. At the conclusion of the hearing, the court issued oral findings. Specifically, the court found that paragraph 10 of the divorce decree is unambiguous and that despite Edmondson's testimony, he had notice of paragraph 10 since 1988.

On April 11, 2014, the court entered a written order directing Edmondson to pay Lockett $3360. The court explained that $3360 represented thirty-two percent of the monthly benefit amount of $1500, multiplied by the seven months that she had not been paid. The court further noted that Edmondson had "received, not only the amounts to which he is entitled, as the plan participant, but those amounts to which [Lockett] was/is entitled." The court found Edmondson's failure to pay Lockett her share of the benefits "has been willful and purposeful, and in violation of the orders of [the] [c]ourt" and ordered Edmondson to pay the costs associated with the action as well as Lockett's attorney's fees.

Edmondson filed a motion for relief pursuant to Arkansas Rule of Civil Procedure 59 on April 25, 2014. On May 22, 2015, the court entered an order denying Edmondson's motion for relief. Edmondson then filed this timely appeal. He raises two issues on appeal.

Edmondson first argues that the circuit court misinterpreted paragraph 10 of the divorce decree and awarded Lockett more of his pension than the decree provides. Specifically, Edmondson argues that Lockett is entitled only to the sum equal to thirty-two percent of what he actually receives, not thirty-two percent of all amounts paid by the plan administrator.

When a contract is unambiguous, its construction is a question of law for the court. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004). A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *Id*. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id*.

In this case, we agree with the circuit court that paragraph 10 of the decree is unambiguous. It provides that "[a]t such time as [Edmondson] retires and begins drawing the pension from his pension fund account, [Lockett] will be paid a sum equal to thirty-two percent (32%) of the monthly pension amount paid to [Edmondson] through Southwestern Bell Corporation, at the time of his retirement." Edmondson testified at the March hearing that he receives $1500 a month in retirement benefits. He offered no other evidence that he receives a different amount. Accordingly, the circuit court did not err in ordering him to pay Lockett thirty-two percent of $1500.

Edmondson next argues that the court erred in finding him in contempt of court because the language of the divorce decree does not require him to personally pay Lockett.

He contends that the decree only requires the pension-plan administrator to pay Lockett and that Lockett should have ensured that a QDRO had been entered. The standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Scudder v. Ramsey*, 2013 Ark. 115, 426 S.W.3d 427. The disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt. *Guffey v. Counts*, 2009 Ark. 410; *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). Before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Guffey*, 2009 Ark. 410.

In this case, the circuit court found that Edmondson had knowledge of the 1988 decree and that Lockett had been awarded thirty-two percent of his retirement benefits. Nevertheless, when Edmondson retired in August 2013, he did not inform Lockett that he had retired, and he retained his benefits along with Lockett's share for seven months. Accordingly, we cannot say that the circuit court was clearly erroneous in finding Edmondson in contempt.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Tripcony, May & Assoc.*, by: *James L. Tripcony*, for appellant.

*H. Oscar Hirby* and *Robert S. Tschiemer*, for appellee.

SLIP OPINION