SLIP OPINION

Cite as 2016 Ark. App. 487

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-970

| | | |
|---|---|---|
| | | Opinion Delivered: OCTOBER 19, 2016 |
| WILLIAM D. NESBITT | APPELLANT | APPEAL FROM THE STONE COUNTY CIRCUIT COURT [NO. 69DR-13-105] |
| V. | | |
| RENEE C. NESBITT | | HONORABLE HOLLY MEYER, JUDGE |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This case is a postdivorce dispute between appellant William Nesbitt and appellee Renee Nesbitt regarding the amount of William's monthly military-retirement benefits he is required to pay Renee pursuant to the parties' property-settlement agreement. In the property-settlement agreement, William agreed to pay Renee 32% of his military-retirement benefits. Not long after the parties divorced, William unilaterally elected to receive Combat Related Special Compensation (CRSC) in lieu of a large portion of his military-retirement benefits, which sharply reduced the monthly payment to Renee that was based on a percentage of his military-retirement benefits. Renee subsequently filed a motion for contempt against William, asserting that he unilaterally and wrongfully converted his retirement pay to disability pay, and asking that William be ordered to pay her a monthly percentage of his retirement pay consistent with the parties' prior property-settlement agreement as if the CRSC election had not been made. Although the trial court

did not hold William in contempt, it found that William could not unilaterally diminish Renee's vested interest in his military-retirement pay, and ordered William to pay Renee a percentage of his military-retirement pay based on what he was receiving at the time of the divorce, along with any future increases.

William now appeals, arguing that the trial court erred in ordering him to make monthly payments to Renee based on the military-retirement pay he was receiving at the time of the divorce instead of the diminished military-retirement pay he was actually receiving. William also argues that the trial court erred in awarding Renee attorney's fees and costs. We find no error and affirm.

We review equity cases on both factual and legal questions de novo on the record but will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Cooper v. Cooper*, 2013 Ark. App. 748, 431 S.W.3d 349. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227. As to issues of law, however, we give no deference to the trial court. *Hargrove v. Hargrove*, 2015 Ark. App. 45, 453 S.W.3d 683.

The parties were married for almost nineteen years prior to their divorce on June 2, 2014. At the time of the divorce, William was retired after having served twenty-five years in the military, and he was receiving military-retirement pay. The decree of divorce incorporated the parties' property-settlement agreement, and paragraph 14 of that agreement provides:

> That as a division of property and not as payment of alimony, the wife shall receive 32% of husband's disposable military retirement pay. That husband served in excess

of 20 years military service and exited the military service on or about May 31, 2012. That the parties married July 2, 1995 and have been married for a period of time in excess of 10 years during which time the husband served in excess of 10 years of military service. That wife shall be entitled to [a] 32% portion of husband's disposable military retirement pay effective March 1, 2014, and husband shall be responsible for submitting payment of wife's portion directly to wife until such time as garnishment of wife's portion is implemented. That wife's counsel shall prepare any necessary Order to implement said garnishment.

On March 2, 2015, Renee filed a contempt motion alleging that, at the time of the parties' divorce in June 2014, she was receiving 32% of William's disposable military-retirement pay per the parties' agreement, which amounted to $1081 per month. She indicated that, due to a cost-of-living allowance, that amount had increased to $1,099.25 per month in January 2015. However, in February 2015 Renee was informed by the Defense Finance and Accounting Service that her 32% portion of William's monthly military-retirement pay had been reduced from $1,099.25 to $101.34, and she received that amount. This adjustment was based on William's election to receive CRSC in lieu of military-retirement benefits. In her motion, Renee asked that her monthly military-retirement benefit be calculated as if William had not made the CRSC election.

In William's testimony, he stated that at the time of the divorce in June 2014 his combat-related injuries had been mischaracterized and that as a result he was not then eligible to receive CRSC. However, in December 2014, he was notified that his two disabilities, a traumatic brain injury and posttraumatic stress syndrome, were then considered to be combat related. Based on that finding, William was informed of his eligibility for CRSC, which he then elected to take. William testified that he made the CRSC election because, unlike military-retirement benefits, those benefits are not taxed. By electing CRSC, William's total monthly benefit amount was not changed because the CRSC benefit

was a dollar-for-dollar setoff against his retirement pay. However, by electing CRSC, the portion of William's monthly benefit designated as military-retirement pay was greatly reduced to where 32% of the military-retirement pay was only $101.34, which was the monthly amount then paid to Renee. In sum, because of William's unilateral election to receive CRSC benefits, the monthly amount paid to Renee was reduced from $1,099.25 to $101.34.

On August 25, 2015, the trial court entered an order containing the following pertinent findings:

> 1. That the parties were divorced by "Decree of Divorce" issued by this Court and filed of record on June 2, 2014.
> 2. That pursuant to Section fourteen (14) of the parties' "Property Settlement and Child Custody Agreement" which was adopted and incorporated into the June 2, 2014 "Decree of Divorce," as a division of property and not as alimony, Renee is to receive 32% of William's disposable military retirement pay.
> 3. That Renee's entitlement to a portion of William's disposable military retirement pay is a periodic distribution of marital property and not alimony.
> 4. That Renee had a vested interest in William's portion of plaintiff's military retirement benefit as of the date of divorce. That Renee's vested interest could not, thereafter, be unilaterally diminished by William's voluntary election to waive a portion of William's military retirement benefit in order to receive military disability payment, specifically, Combat Related Special Compensation (i.e. CRSC). That William's action to elect to receive military disability payment (i.e. CRSC) in lieu of William's military retirement benefit unilaterally deprived Renee of Renee's vested marital property.
>
>      . . . .
>
> 6. That the Court finds the parties' property settlement agreement is clear and susceptible to only one reasonable interpretation, which is that William is obligated to pay Renee a fixed percentage (i.e. 32%) of William's disposable military retirement pay which William was receiving at the time of the parties' divorce and also a fixed percentage (i.e. 32%) of any future increases in William's disposable military retirement pay, regardless of whether William continued to receive military retirement pay or voluntarily elected to receive military disability pay in lieu of military retirement pay.

7.     That despite William's voluntary election to receive military disability pay in lieu of military retirement pay, William remains personally obligated to continue to make periodic distributions of marital property and future cost of living adjustments (i.e. C.O.L.A.) to Renee as agreed to in the parties' property settlement agreement.  That [is] because Renee's right to receive an agreed portion of William's disposable military retirement pay is a property right which vested at the time of the parties' divorce, [and] future distributions from William to Renee are not distributions of William's military disability pay.

8.     That William is not in contempt of this Court for voluntarily electing to receive military disability pay in lieu of military retirement pay since William is entitled to make such an election under Federal law and there are logical tax advantages to William for making such an election.  That nevertheless, William remains obligated for payment to Renee for Renee's vested interest in periodic distribution[s] of marital property.

9.     William shall pay to Renee within thirty (30) days from this Court's written ruling dated July 13, 2015 the stipulated lump sum amount of $4,989.55 (i.e. ($1,099.25 − 101.34) X 5 months) which represents the amount of money Renee was entitled to receive each month (i.e. $1,099.25) less the amount of money Renee actually received each month (i.e. $101.34) for the period of February 2015 through June 2015 (i.e. 5 months) resulting from William's election to receive military disability pay rather than military retirement pay.

10.     That beginning in July 2015 William shall provide Renee each month with a copy of William's monthly "Retiree Account Statement" so that Renee may calculate the monthly benefit amount due to Renee from William for that month.  That calculation of the monthly benefit due to Renee from William shall include any costs of living adjustments (i.e. C.O.L.A.) Renee would have received but for William having made an election to receive military disability pay in lieu of military retirement pay.

For his first point on appeal, William argues that the trial court erred in finding that the parties' property-settlement agreement was clear and susceptible to only one reasonable interpretation and that William is obligated to pay an amount to Renee each month based on his disposable retirement pay at the time of the divorce.  He cites *Lamb v. Lamb*, 2015 Ark. App. 248, where we stated that, when contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed.  William asserts that the plain language of the parties' property-settlement agreement provided that Renee

SLIP OPINION

would receive 32% of William's military-retirement pay, and that the agreement prescribed no specific dollar amount to be paid to Renee, nor did it designate any minimum amount. William further posits that, although Renee's monthly payment was drastically reduced due to his postdivorce CRSC election, she was still receiving 32% of his military-retirement pay as contemplated by their agreement. William contends that, because Renee was receiving exactly what she bargained for, i.e., 32% of his military-retirement pay or $101.34 monthly, Renee's motion to receive greater benefits based on his military-retirement pay at the time of divorce should have been denied.

In Arkansas, military-retirement benefits are marital property. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004). However, in *Mansell v. Mansell*, 490 U.S. 581 (1989), the United States Supreme Court held that the Uniformed Services Former Spouses' Protection Act excludes from division in divorce military retired pay that has been waived to receive veterans' disability benefits, leaving state courts free to divide only disposable retired pay.

A similar situation to the instant case occurred in *Surratt, supra.* In that case, when the parties divorced they entered into a property-settlement agreement entitling wife to receive one-half of husband's monthly military-retirement income as it was at the time the complaint for divorce was filed. Several years after the parties divorced, husband received a 100% disability rating, and he received an increase in his disability benefits with a concurrent termination of his military-retirement pay. As a result, payment for wife's share of husband's retirement benefits ceased and she filed a motion for contempt. The trial court ruled that, notwithstanding the transformation of husband's retirement benefits into

disability benefits, husband was still obligated to make monthly payments to wife representing one-half of the amount of the retirement pay he was receiving at the time of divorce. On appeal, husband contested the trial court's ruling, but we affirmed and stated:

> In this case, the settlement agreement, divorce decree, and the trial court's order of enforcement did not purport to divide [husband's] disability benefits. Therefore, the Act and *Mansell v. Mansell* were not violated, and the nature of the sources with which [husband] may satisfy his contractual obligation to [wife] are beside the point. When the parties entered into the settlement agreement, [wife] received a vested property interest in her right to a portion of [husband's] retirement benefits. [Husband] could not, by later waiving those benefits in order to receive disability payments, unilaterally deprive [wife] of her property. Thus, we affirm the trial court's interpretation of the settlement agreement and its enforcement of [wife's] rights pursuant to it.

*Surratt*, 85 Ark. App. at 276–77, 148 S.W.3d at 767. Citing cases from other jurisdictions, we stated in *Surratt* that when a property-settlement agreement divides military-retirement benefits, the nonmilitary spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree, and that the vested interest cannot thereafter be unilaterally diminished by an act of the military spouse.

In the language of the property-settlement agreement in the case at bar, the parties agreed that Renee shall be entitled to a 32% portion of William's disposable military-retirement pay effective March 1, 2014. Consistent with our holding in *Surratt, supra*, Renee had a vested interest in her portion of the military-retirement benefits as of the date of the court's decree, which could not be unilaterally diminished by an act of William.[1] Although

---

[1]We acknowledge that, in *Surratt*, the parties' property-settlement agreement specifically provided that the retirement income could not fall below the amount husband was receiving at the time of divorce. Although there was no separate specific minimum provision in the instant case, William nonetheless could not unilaterally diminish Renee's vested interest in the retirement benefits.

it was understandable that, for purposes of reduced tax liability, William elected to later waive the bulk of his military-retirement benefits in order to receive disability benefits in the form of CRSC, this could not deprive Renee of her property. Therefore, we hold that the trial court correctly interpreted the parties' property-settlement agreement and committed no error in ordering William to pay Renee the equivalent of what her share of his military-retirement benefits were at the time of the parties' divorce, plus any COLA increases.

William's remaining argument is that the trial court erred in awarding attorney's fees and costs to Renee. In Renee's motion for attorney's fees she requested $6900 in attorney's fees and $426.85 in costs. The trial court entered an order awarding Renee $3500 in attorney's fees and $426.85 in costs. William asserts that Renee's claim listed five generalized statements for work done, one generalized fee for process service, and one generalized court-reporter fee. William contends that the billing provided by Renee amounted to "block billing" and lacked sufficient detail to support the fee award. He cites three federal cases and states that courts have expressed displeasure with generalized billing because it hinders the court's ability to conduct a meaningful review of the fee application. Given the totality of the case and the block billing submitted by Renee, William asks that the attorney's fees and costs awarded by the trial court be struck.

We held in *Tiner v. Tiner*, 2012 Ark. App. 483, 422 S.W.3d 178, that, in domestic-relations proceedings, the trial court has the inherent power to award attorney's fees, and whether the trial court should award fees and the amount thereof are within the trial court's discretion. A trial court need not conduct an exhaustive hearing on the amount of attorney's

fees because it has presided over the proceedings and gained familiarity with the case and the services rendered by the attorney. *Tiner*, *supra*. Furthermore, we have not strictly required documentation of time and expense in a divorce case. *See id*. With these principles in mind, and recognizing the superior position of the trial court in this regard, we hold that there was no abuse of discretion in the attorney's fees and costs awarded.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Victor D. "Trey" Wright III*, for appellant.

*Rice & Adams*, by: *Brian K. Woodruff*, for appellee.