Cite as 2023 Ark. App. 436

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-22-294

| | |
|---|---|
| LINZY MOORE<br><br>APPELLANT<br><br>V.<br><br>COLLIN MOORE<br><br>APPELLEE | Opinion Delivered October 4, 2023<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63DR-15-1138]<br><br>HONORABLE KEN CASADY, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

Appellant Linzy Moore (now Jones) appeals an order of the Saline County Circuit Court denying her request that appellee Collin Moore be held in contempt for any actions he has taken regarding his military retirement or disability payments. She raises three points on appeal: (1) the circuit court erred in denying her motion for contempt because the parties had a contractual agreement as to Collin's military retirement, and she had a vested property interest in a portion of the retirement that Collin could not later waive to reduce her interest; (2) *Howell v. Howell*, 581 U.S. 214 (2017), was decided after the final divorce hearing and should not be applied retroactively; and (3) the agreement made by the parties in the divorce decree states that her share of Collin's monthly military retirement pay is not subject to Collin's waivers, but if the waivers do apply, only the Veteran's Administration waiver (VA waiver) applied because Collin was not forthcoming about the existence of the military disability waiver (military waiver) at the time of the final divorce hearing. We affirm.

## I. *Facts and Procedural History*

The parties married on November 11, 2001. They have two children—MC1 (born 2007) and MC2 (born 2011). When Collin filed for divorce on October 26, 2015, he was in the process of retiring from the military. His retirement date was November 24, 2015. A final divorce hearing took place on March 15, 2016. The parties agreed to certain matters, and other matters were decided by the court. The agreements were read into the record, including the following by Collin's counsel:

> Mr. Moore acknowledges that there will be ~ it's around 31 percent of his military retirement, outside of his VA waiver, is Ms. Moore's military retirement entitlement. I've put the military's required language in the decree for them to do the calculation on their own, but we did calculate it at around 31 percent so that we could come up with the child support amount and things like that.
>
> Mr. Moore ~ once Ms. Moore receives her check from an official calculation ~ will pay whatever ~ he'll make that for whatever difference there is within 30 days of being shown the actual amount that she's receiving.

The divorce decree entered on June 7, 2016, provided:

> 49. **Military Retirement:** Plaintiff is a military member. The parties agree Defendant is entitled to 32% of a fraction of Plaintiff's monthly military retired pay. The numerator of the fraction shall be 168 months of marriage during the member's creditable military service, divided by the member's 264 creditable months of military service. 168/264 = .636/2=.318 or 32%.
>
> 50. The parties agree upon Defendant's receipt of her first official military retirement portion from the military, upon their calculations, she shall provide proof of the amount to Plaintiff, and he shall pay the difference within thirty (30) days in that amount and the amount he has paid to her under the Temporary Order.

The temporary order entered February 17, 2016, provided that Collin shall pay Linzy $459.49 a month from his military retirement. It stated that the military retirement

2

distribution calculations were based upon Collin's "current prediction" of the amounts he will receive.

Prior to receiving the direct payments from the Department of Finance and Accounting Services (DFAS), Collin made monthly payments of around $500 directly to Linzy. The first check Linzy received from DFAS was for $270 in December 2016.

On September 23, 2016, Linzy filed an amended motion for visitation and a motion for contempt.[1] It was in this contempt motion that Linzy alleged Collin "agreed to pay her 32% of his gross military retirement each month and he is behind on his payments." She asked that Collin be found in contempt "as he had not paid as *he agreed* and was ordered." (Emphasis in original.) Collin filed an answer and counterclaim on October 24, which denied the retirement allegation. On December 28, Collin filed an amended counterclaim for contempt and for modified terms, alleging in part that he had been overpaying Linzy's portion of the retirement to which she was entitled prior to the military paying her directly. Collin sought reimbursement for the overpayment.

In a January 19, 2017 motion for continuance, Linzy alleged that Collin had converted "most of his military retirement benefits to disability, resulting in a diminishing share of military retirement by approximately 70% ($872.96 reduced to $270)." Linzy asked for additional time to obtain documentation related to Collin's benefits. She also cited *Nesbitt v. Nesbitt*, 2016 Ark. App. 487, 503 S.W.3d 807, arguing that the postdivorce

---

[1]A motion regarding visitation had been previously filed.

3

conversion of benefits was in violation of the law. On January 20, Linzy filed a supplemental response to Collin's counterclaim, asking the court to reimburse her for any amount due, as was done by the trial court in *Nesbitt*, and that Collin be ordered to supplement the difference between the amount being paid and what she is entitled to plus cost of living increases (COLA). She sought attorney's fees, alleging that Collin knowingly and intentionally reduced her benefits subsequent to the divorce with an intent to violate the parties' agreement.

A hearing took place in February 2017. The court decided all issues except those regarding Collin's retirement because more information was needed. On August 25, 2017, the court entered an order, upon Linzy's request, directing DFAS to speak with her and her attorneys about all matters related to Collin's retirement pay.

The retirement issues were reset to a November 17 hearing at which the parties indicated they had "settled." Collin's counsel stated that the court had left open the record "to allow the parties to seek a definitive answer about whether Defendant's portion of Plaintiff's military retirement is appropriate." Counsel further stated that "the parties have made an agreement on that issue . . . effective now, there will be nothing owed by either party retroactively." Counsel went on to address the Survivor Benefit Plan (SBP).[2] The court

---

[2]The SBP plan is not at issue in this appeal; however, it affected Linzy's amount of retirement benefits. Linzy had, at the time of divorce, agreed to pay the monthly $177 premium for the SBP in order to remain the beneficiary. During the time she began to think Collin was underpaying her portion of the military retirement, she stopped paying it. The parties later agreed to name the children as the beneficiaries, at which point Linzy was no longer required to reimburse Collin for the premiums.

4

entered an order on December 11 addressing all the issues from both the February and November hearings. The order provides in pertinent part as follows:

13. At the November 20, 2017 hearing, the parties entered an agreement as follows:

. . . .

e. Effective immediately, the Plaintiff agrees to an additional amount of $56.00 each month in Military Retirement to Defendant to account for the amount of military retirement benefits Defendant is losing by the premium for the Survivor Benefit Plan being deducted from Plaintiff's *gross Military Retirement Benefits prior to the disposable benefits amount used to calculate Defendant's 32% of Plaintiff's Military Retirement Benefits.*

f. Because of this agreement, neither party owes the other party any retroactive money for Military Retirement Benefits or SBP premiums as of this date. *This Order fully and finally settles all current issues related to the amount of Military Retirement Benefits Plaintiff owes the Defendant each month* and Defendant's obligation to reimburse the Plaintiff for any unpaid SBP premiums.

(Emphasis added.)

Over three years later on April 8, 2021, Linzy filed a combined motion for contempt and increase in child support. As to the retirement issue, she alleged the following in part: (1) at the time Collin filed for divorce, the parties and the court were "unclear" as to the amount she would be receiving in military retirement; (2) Collin was ordered at the temporary hearing to pay $459.49 monthly until the final hearing; (3) the divorce decree provided that when she received her first payment from DFAS, Collin had thirty days to "make up the difference between what he had been paying under the Temporary Order and the amount [she] was to actually receive;" (4) after the final hearing, Collin was paying over $500 monthly; (5) at the time of the final hearing, Collin had a VA waiver in place, which

5

reduced her share of retirement; (6) since the final hearing, Collin put another disability waiver in place that reduced his "disposable income" for purposes of calculating her 32 percent share of the retirement; (7) Collin cannot reduce her share by converting his retirement pay to disability pay, citing *Nesbitt, supra*; and (8) Collin should be made to pay "32% of his gross military pay" back to the date of divorce." Linzy asked that Collin be held in willful contempt for "purposely and knowingly reducing her share of the Plaintiff's military retirement benefits."

On May 21, 2021, Collin filed a response and counterclaim. With respect to the retirement benefits, Collin denied putting in an additional disability waiver after the final hearing, stating that his disability rating and his VA waiver are exactly the same as they were at the time of divorce with slight fluctuation caused by the administrative processes of the VA. He denied that he "put disability waivers in place." He further claimed that even if his rating had changed since the divorce, Linzy failed to cite the proper caselaw governing the issue in this case, referring to *Howell v. Howell*, 581 U.S. 214 (2017), which he claimed arguably overturned *Nesbitt* and its class of cases. The parties submitted trial briefs on the retirement issue. In his brief, Collin argued that the 2017 litigation resolved the issue and that Linzy should not be allowed to relitigate it.

A hearing took place on September 13 where the court heard testimony from both parties on the retirement issue. Much of the testimony had to do with when the military waiver was put into place, whether Collin informed Linzy, and when Linzy became aware of the military waiver. Collin asserted that the military waiver was in place at the time of divorce,

6

but he was unaware of it. His military disability percentage was 20 percent and his VA percentage was 40 percent. He testified that there was no certain time when he received an "amount" on the military waiver and there was no "amount" he could associate with it, explaining that it is a "variable" used "in computation of former spouse benefits." He said that a monetary amount was assigned to the military disability percentage the day his retirement took effect on November 24, 2015. When asked what he gets for the military waiver, Collin said he does not get anything in terms of "tax-free" money or an additional payment from the military. He testified that his military retirement statement does not show anything is taken out for the 20 percent military waiver.

Collin was questioned about a March 2021 letter from DFAS explaining the breakdown of his retirement pay effective as of December 2019 and December 2020, which he had procured at Linzy's request. In 2019, Collin's gross retired pay was $2828 with deductions of $1011 for disability pay, $781.61 for the VA waiver, and $183.96 for the SBP. The resulting "retiree's disposable income" after the authorized deductions was $851.43. The former-spouse payment based on 32 percent of the disposable income amounted to $272.45. The 2020 calculations varied only slightly with the former-spouse payment being $270.95. He stated that they had talked about the military disability pay being withheld from his gross military retirement in court in 2017. With respect to the amounts he paid prior to DFAS sending them directly, Collin said they did not know what their respective portions of the military retirement would be.

On cross-examination, Collin stated that, although the military waiver is not listed on his pay stub, his December 2016 pay stub reflected a deduction of $270 for the former-spouse benefit, which was what Linzy was receiving directly from DFAS. Although the court did not allow Collin to introduce a document from DFAS requested in 2017 that explained how Linzy's former-spouse benefit was calculated, Collin testified that he presented the calculation to his counsel during the 2017 litigation.[3] He said that at the time of the 2017 hearing, Linzy was aware of how much money she was entitled to from his retirement. Collin also testified that an August 27, 2015 order from the military, which was admitted into evidence, indicates he had a 20 percent disability rating. He stated that this was the same disability rating that Linzy claimed she did not know of until after 2017, but he recalled it was submitted in discovery during the divorce proceedings in 2016. Collin testified that there was nothing new in 2021 that did not exist in 2016 and 2017. He thought the 2017 litigation resolved the amount of her military-retirement benefit.

Linzy testified that at the time of divorce in March 2016, she thought she was to receive 32 percent of the retirement pay after the VA waiver. When she received the check from DFAS directly, she attempted to get help from Collin to "straighten out" why she was not getting the correct amount. She tried to talk to DFAS to no avail; they told her his account was private and they could not give her any information except that she was receiving

---

[3]The circuit court sustained Linzy's objection to the introduction of this document based on hearsay, concluding that it was a business record, and Collin did not qualify as the person who would maintain it.

32 percent of his disposable income, which she said was not their agreement. Linzy testified that the 2017 litigation only resolved what was owed at that time, which they decided was a "wash." She explained that they were "tired of fighting over it because no one could figure it out. We both agreed upon that, and we were just going to move forward."

When asked by the court why they did not just put a certain amount in the decree, Linzy stated "because it can change every year. . . . it can go up, just like cost of living." If she did not use the percentage, she would not get the benefit of the change. When the court asked why she would not get the decrease of something that is also within the scope of the military, Linzy stated because Collin agreed to the 32 percent minus the VA waiver. Linzy did not recall seeing the document concerning Collin's military disability rating. She stated that in 2016 she received a check "making up" the difference after she received her military check.

On cross-examination, Linzy denied ever receiving the Army disability paperwork in discovery during 2017. She admitted that she knew he was disabled by the VA in 2015 but not the Army. Linzy agreed that after the 2017 order was entered, she continued to receive about $270 monthly for the military retirement but sued him in 2021 because she thinks she should be getting more.

At the conclusion of the hearing, the circuit court ruled on the retirement benefits as follows:

THE COURT: All right. Ms. Gattis, with regard to the big request about the -- you know, even if I got beyond the 2017 date of -- where y'all all really seemed like pretty locked in language, because any issues

9

that were still outstanding, I would really consider current at that time. So that language seem pretty locked in. But even beyond that, you know, the language ~ if I just go by the language of the original order, you know, retirement is retirement, and one of the things y'all ~ I forget ~ I believe your client said it, none of us ~ and I wrote quotation marks around it. "None of us really knew how it worked at that time." And no one knew how it worked at that time, and that might be the case, but y'all did the best that you could under the order ~ and put it in an order. But it says retirement benefits. And she gets the benefit even ~ she might still get a benefit if those retirement benefits go up within the system that is provided. You know, she also has to deal with if there is the system provided that says there might be waivers applied for or reevaluations for waivers. You know, she has to deal with that as well. Because, you know, that's ~ y'all locked in a percentage of a certain thing. And in this case that Ms. Robertson has submitted, you know, the language in it ~ it says, We know that a family court when it first determines the value of a family's assets remains free to take account of the contingency that some military retirement pay might be waiver, or as the Petitioner himself recognizes take account reductions in value when it calculates or recalculates the need for spousal support. All of that was available to not just y'all, but to the Court, at the time of this agreement.

MS. GATTIS:      Your Honor, that was a 2017 case. And that's a retroactive application –

THE COURT:      It's denied. That's denied. And, you know, I don't even have to use that, you know. They're sending me breakdowns of what retirement – of what the retirement is and what his disability is. I mean, not sending me, but y'all have added ~ it was in evidence. Retirement pay means one thing. I guess you could have tried to flesh it out more in the agreement.

MS. GATTIS:      Can you speak to the issue, though, of retroactivity? I mean, just for the record? I would like to know.

THE COURT:      I mean, I don't have to because it's denied.

The final order entered November 15, 2021, provides that "Defendant's request that Plaintiff be held in contempt for any actions Plaintiff has taken regarding his military retirement or disability payments is denied." While this order contained numerous rulings on various issues, the denial of Linzy's contempt motion regarding the military-retirement issue is the only one before us on appeal.

## II. *Standard of Review*

In order to establish contempt, there must be willful disobedience of a valid order of a court. *See Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id.* Civil contempt protects the rights of private parties by compelling compliance with court orders made for the benefit of the parties. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Our standard of review for civil contempt is whether the findings of the circuit court are clearly against the preponderance of the evidence. *Id.*

## III. *Discussion*

We recognize that Linzy's brief contains three separate points on appeal. However, they all relate to the same issue—whether the circuit court erred in denying her motion for contempt—and will be addressed together.

Linzy argues that the circuit court erred in denying her motion for contempt because the parties had a contractual agreement read into the court record at the divorce hearing that Collin would pay Linzy 32 percent of his military retirement pay and that Collin willfully

11

violated the agreement by taking actions to reduce Linzy's agreed upon share of his military retirement pay. In her 2021 motion for contempt, Linzy asked that Collin be held in willful contempt for "purposely and knowingly reducing her share of the Plaintiff's military retirement benefits" and be ordered to pay her the entire amount owed dating back to the date of divorce. After hearing the testimony of the parties, the circuit court entered an order denying her request that Collin be held in contempt for any actions he had taken regarding his military retirement or disability payments. From the record before us, we cannot say that the circuit court's denial of Linzy's motion for contempt is clearly against the preponderance of the evidence.

Here, the parties reached an agreement on the division of retirement pay that was read into the record at the hearing and incorporated into the divorce decree, albeit worded slightly differently because the decree is silent on the VA waiver. Linzy approved the decree at the time of divorce. She argues that the court relied on the negotiated agreement, which did not include the military waiver, in denying her request for alimony in the amount of $300 a month for two years.[4] While the parties' finances were before the court, there is no indication that the court's denial of the request was based on the amount the parties thought Linzy would receive, which goes to the crux of the present appeal.

The problem in this case is that the monetary amount Linzy was to receive as the former spouse was uncertain at the time of divorce, although the parties had been able to

---

[4]Linzy did not appeal the denial of alimony after the decree was entered.

determine a percentage of the retirement pay to which Linzy would be entitled—32 percent. Both the agreement read into the record and the decree indicate that the military would calculate Linzy's portion and pay her directly. Until that time, Collin was to pay pursuant to the temporary order, which set an amount at $459, which was what Collin "predicted" Linzy's share would be.

Even prior to receiving her first check from DFAS in December 2016, Linzy had already filed a motion for contempt stating that Collin was not paying the amount he agreed to in the decree. After Linzy received her check from DFAS of approximately $270, Collin filed an amended counterclaim for contempt alleging that he had overpaid and sought reimbursement. The postdivorce pleadings filed in 2016 and 2017 were filled with allegations with respect to the amount of Linzy's portion of the retirement, including that Collin had converted "most of his military retirement benefits to disability, resulting in a diminishing share of military retirement by approximately 70% ($872.96 reduced to $270)."

The February 2017 hearing left the retirement and SBP issues undecided because more information was needed to determine whether Collin was "underpaying" the military retirement. When the parties returned to court in November 2017, they had settled, and an agreement was read into the record. Although the parties decided neither party owed the other party for retroactive military benefits or SBP premiums, the order also provides that "[t]his Order fully and finally settles all current issues related to the amount of Military Retirement Benefits [Collin] owes to [Linzy] each month." Having reviewed the pleadings,

it is apparent that the amount of retirement owed to Linzy was an issue in 2017, including the military waiver.

After the December 2017 order was entered, Linzy continued to receive around $270 monthly. More than three years later, Linzy filed another motion for contempt in April 2021, again alleging that Collin waived his military retirement to her detriment. This motion referenced a March 2021 document Collin procured from DFAS for Linzy. It explained the change between the 2019 and 2020 payments from $272.45 to $270.95. In this document, however, it showed the deductions of his gross retired pay to include $1014 in disability pay and $781 for the VA waiver.

At the hearing on the 2021 motion for contempt, Collin testified that the military waiver was in place at the time of divorce, but he was unaware of it. His military retirement statements did not show the disability. It was his understanding that the disability waiver was a "variable" used "in computation of former spouse benefits." He was aware at the time of divorce that his military disability rating was 20 percent and claimed he provided this document during discovery in 2017. Linzy, on the other hand, testified that she was not aware of the document. Linzy agreed that after the 2017 order was entered, she continued to receive about $270 monthly for the military retirement but sued him in 2021 because she thought she should be getting more. Both parties described different understandings of the 2017 order as it pertained to the retirement issue.

Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Ivy,*

14

*supra.* The percentage of retirement had been determined at the time of the divorce decree, but the monetary amount was uncertain. Although the parties agreed that it would be 32 percent, there was no reference to gross pay, net pay, or disposable pay. The divorce decree, which Linzy approved, only referenced 32 percent of "retired pay." The payments Collin had been making pursuant to the temporary order were based on "predictions." The decree provided that Linzy's portion would be based on the military's calculations. These calculations, unfortunately, were different than the parties anticipated. The parties litigated this issue in 2017 and reached a settlement. When Linzy filed the present contempt action, nothing had changed. Linzy was receiving the same amount she had received since the military issued its first check directly to her in December 2016. Given the record before us, we cannot say that the circuit court clearly erred in denying the motion for contempt.

We are not unmindful that Linzy cites *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004), and *Nesbitt v. Nesbitt*, 2016 Ark. App. 487, 503 S.W.3d 807, in support of her argument that the circuit court erred in denying her contempt petition and her related argument recognizing that *Howell v. Howell*, 581 U.S. 214 (2017), may be controlling but should not be applied retroactively. *Nesbitt* and *Surratt* both involved the postdivorce conversion of military retirement pay where the nonmilitary spouse sought enforcement of the agreed amount at the time of divorce through a motion for contempt. In both those cases, the circuit court enforced the agreements made at the time of divorce without any contempt findings. We affirmed the circuit court's decisions. In *Howell*, the Supreme Court reversed in a factually similar case, holding that federal law preempts state courts from

15

restoring the former spouse's portion of retirement pay lost due to the postdivorce waiver. *See Howell*, 581 U.S. at 221–22.

Although we acknowledge Linzy's arguments with respect to these cases, our decision does not turn on an application of them. It is significant that Linzy argued *Nesbitt* in the 2017 litigation but chose to settle instead of pursuing a court decision on the issue. Finally, Linzy suggests how the divorce decree should be interpreted and enforced, as she did in her request for contempt. Because the circuit court denied her motion for contempt, there was no ruling on this issue. As a result, there is nothing for this court to review.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Owings Law Firm*, by: *Tammy B. Gattis*, for appellant.

*Robertson, Oswalt & Nony*, by: *Chris Oswalt*, for appellee.